**Arthur M. and Ruth F. YOUNG,**
**Petitioners,**

v.

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Respondent.**

**No. 176, Docket 25348.**

United States Court of Appeals
Second Circuit.

Argued Feb. 13, 1959.

Decided July 13, 1959.

Stephen P. Duggan, Jr., New York City (William J. Manning, Donald Oresman and Simpson Thacher & Bartlett, New York City, on the brief), for petitioners.

Grant W. Wiprud, Dept. of Justice, Washington, D. C. (Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

The sole question before us is whether an inventor's right to terminate an agreement by which he conveyed helicopter patents to an aircraft manufacturer was a "substantial right to a patent" within the meaning of § 117(q) of the Internal Revenue Code of 1939 which permits an inventor to treat as capital gains the royalties received in return for the transfer of all substantial rights to patents.[1]

■■ Taxpayers maintain that the power of termination did not preserve any substantial right in the patents because the interests that would have been regained upon the exercise of the power were of no practical value. We hold that the taxpayers have failed to sustain their burden of proving that the rights the inventor would regain are not substantial, and accordingly we affirm the decision of the Tax Court, 29 T.C. 850.

Over a period of years, starting in 1928, Arthur M. Young developed and patented certain inventions in the field of helicopter aviation. Lacking the personal financial resources or production facilities to exploit the inventions himself, Young in 1941 approached the Bell Aircraft Corporation about the possibility of its exploiting and developing his inventions. By a contract dated November 1, 1941, Young agreed to assign to Bell full right, title and interest in his then existing helicopter patents, patent applications and inventions and further inventions and patents developed by Young during the life of the agreement. Bell was vested with the full right to grant licenses or sub-licenses and to practice the inventions in its own plant or plants throughout the world as well as the right to bring and control infringement suits against persons who in Bell's opinion infringed upon Young's patents. In return Bell agreed to pay Young royalties consisting of a designated portion of the sales price of helicopters manufactured by Bell and of the royalties Bell would receive from any sub-licensees.

The agreement provided that Bell might terminate the agreement at the end of the first year; that either Bell or Young might terminate it at the end of the second year upon thirty days written notice, and thereafter at any time upon six months written notice to the other.

The agreement was expressly made subject to a cross-licensing agreement of the Manufacturers Aircraft Association, Inc. (M. A. A.) of which Bell was a member. Under the terms of the cross-licensing agreement each subscriber agreed to grant all the other subscribers a license to make, use and sell airplanes under all patents owned, controlled or

---

1. Section 117(q) of the Internal Revenue Code of 1939 as amended in 1956, 70 Stat. 404, provides in pertinent part:

"(q) Transfer of patent rights—

"(1) General rule.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(A) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(B) contingent on the productivity, use, or disposition of the property transferred.

\* \* \* \* \*

"(4) Applicability.—This subsection shall apply with respect to any amount received, or payment made, pursuant to a transfer described in paragraph (1) in any taxable year beginning after May 31, 1950, regardless of the taxable year in which such transfer occurred."

licensed by the subscriber. All licenses so granted were to run for the full term of the underlying patent, regardless of whether the granting subscriber withdrew from the Association prior to the expiration of the patent. Upon withdrawal, however, the subscriber lost all his rights to patents owned or controlled by the other subscribers.

On March 1, 1944 Young and Bell entered into an agreement which superseded the 1941 contract. Under this 1944 agreement, both parties were given the right to terminate the agreement at any time upon six months written notice. This agreement was also expressly made subject to the M. A. A. cross-licensing agreement.

The 1941 and 1944 contracts are substantially similar with respect to the interests that Young, upon the exercise of his power of termination, would regain in the patents he conveyed to Bell, and their provisions need not be separately stated. If the 1944 agreement was terminated these consequences would follow:

1. Bell would reconvey to Young all the patents which Young had developed himself and which he had theretofore transferred to Bell.[2]

2. Any licenses theretofore issued to subscribers of the M. A. A. or to other aircraft companies would continue in full force and effect.

3. Bell would retain a license to use the patents reassigned to Young on the same terms as other members of the M. A. A. or if a patent was not covered by the M. A. A. cross-licensing agreement, on terms as favorable as Young

had granted any other licensees, or in the event that no such license was granted, on the basis of a specified royalty.

4. Young would grant Bell a nonexclusive license to any inventions, either solely or jointly made by Young within 20 years after the termination of the agreement, in the field covered by the M. A. A. agreement or the then current manufacturing activities of Bell. Such a license would be granted on no less favorable terms than Young would give any other licensee.

5. Young would regain the right to prosecute infringement suits but would have to bear the expenses thereof.

During the period from January 23, 1942 to February 26, 1948 Young, by separate instrument, executed and recorded in the patent office assignments to Bell of various aircraft and helicopter patents.

Young and his wife filed joint returns for the years 1951, 1952 and 1953 reporting the royalties received under the 1941 and 1944 agreements as capital gains. The Commissioner disallowed such treatment and taxed the royalties as ordinary income. The Tax Court affirmed the Commissioner's determination and from this decision the taxpayers appeal.

Section 117(q) was added to the 1939 Code in 1956 in order to apply the policy of § 1235 of the 1954 Code, 26 U.S.C.A. § 1235, to the tax years 1950–1953. Bannister v. United States, 5 Cir., 1958, 262 F.2d 175, 177, footnote 4. The report of the Senate Finance Committee on § 1235, Sen.Rep. No. 1662, 83rd Cong. 2d Session, reflects an intention on the

2. It was also provided that in the case of all inventions jointly developed by Young and Bell that Bell would not be required to reassign the patents on these inventions to Young but only to give him a "nonexclusive indivisible license to manufacture, sell and use such joint invention" upon the same terms as Bell granted to members of the M. A. A. or in the event that the invention was not within the field covered by the M. A. A. agreement, on the same terms as Bell granted any other licensee. It does not

appear, however, that any such joint inventions were patented. Nor have the taxpayers made any argument that a portion of the royalties taxed by the Commissioner as ordinary income may be allocated to the transfer of patents on joint inventions and that at least as to such patents, Young assigned all substantial rights to Bell. Accordingly we do not discuss here whether the patents on the joint inventions may be accorded a different tax treatment than the patents on inventions developed by Young alone.

part of Congress that the practical value rather than the technical nature of any interest reserved should determine whether the taxpayer has retained a substantial right to a patent. In context the statement in the report that a transfer terminable at will does not qualify for capital gains treatment must be taken to mean that such power disqualifies the transfer only if, in the light of all the circumstances, the transferror thereby reserves a right of some practical value. Bannister v. United States, supra, though distinguishable on its facts from the instant case, illustrates that in some circumstances a transfer terminable at the will of the inventor may qualify for capital gains treatment.

Certainly the courts have been quick to heed Congress' invitation to construe liberally §§ 117(q) and 1235. See Bannister v. United States, supra; Magnus v. Commissioner, 3 Cir., 1958, 259 F.2d 893; Rollman v. Commissioner, 4 Cir., 1957, 244 F.2d 634; Lawrence v. United States, 5 Cir., 1957, 242 F.2d 542; Watson v. United States, 10 Cir., 1955, 222 F.2d 689; United States v. Carruthers, 9 Cir., 1955, 219 F.2d 21; Gruber v. United States, D.C.D.Or.1958, 158 F. Supp. 510; First National Bank of Princeton v. United States, D.C.D.N.J. 1955, 136 F.Supp. 818.

But on the facts of this case we must agree with the Tax Court that the taxpayers are not entitled to capital gains treatment. Upon the exercise of the power of termination Young would enjoy the right to license any new aircraft manufacturer who was not a member of the M. A. A. or any existing manufacturer who resigned from the M. A. A., to prosecute and control infringement suits, and to exploit the patents himself. Young would also regain the right to license existing or prospective foreign manufacturers to exploit the patents reconveyed by Bell to him. Bell has granted four foreign manufacturers a license to exploit the Young patents. No argument has been advanced by the Commissioner either before the Tax Court or this court,

that this right constituted a substantial right to a patent.

Young carefully bargained for these rights. But taxpayers argue that these rights were in fact valueless because every American manufacturer capable of producing helicopters on a commercial basis was a member of the M. A. A., and thus already licensed to use the Young patents, and because there was no likelihood that in the future any American manufacturer would refuse to avail itself of the benefits of M. A. A. membership. They argue therefore that there is no one to whom Young could license his patents and no one who is likely to infringe these patents.

Taxpayers have the burden of proving their contention that the rights were valueless. Helvering v. Taylor, 1935, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623. The only witness called by the taxpayers other than Young himself, was Herbert Munsey, vice-president and patent counsel for Bell from 1940 through August 1957 and Bell's representative in the negotiations with Young. It is upon Munsey's testimony that taxpayers rely to support their claim that Young's power to license was not a substantial right.

Munsey's testimony indicates that at some past time all aircraft manufacturers in the United States with sufficient finances and facilities to build helicopters commercially were members of the M. A. A. Although it is not clear from his testimony, Munsey was apparently referring to the time when the agreements transferring Young's patents to Bell were negotiated. But Munsey's testimony not only fails to make this point clear but also indicates that for some undisclosed period of time prior to 1951 Bell licensed the Young patents to a domestic helicopter manufacturer who was not then a member of the M. A. A.

The record is also devoid of any proof of the ease of entry into the helicopter field or the ease with which a newcomer to the field might be admitted to the M. A. A.

On this record it is impossible for us to conclude that at the time Young transferred his patents to Bell[3] it was not likely that some manufacturers capable of producing helicopters commercially would not be members of the M. A. A. for a substantial period of time. We must conclude therefore that the taxpayers have not sustained their burden of proving that Young's retained right, in the event of cancellation, to license domestic helicopter manufacturers was not a substantial right at the times in question.

■ Taxpayers' final argument is that Young's right of termination should be treated as a condition subsequent since it was clearly the intention of the parties, as revealed by their testimony before the Tax Court, that the right was to be exercised only in the event that Bell failed to exploit Young's patents. Taxpayers correctly point out that a right to terminate such an agreement, conditioned upon the happening of a future event rather than on the will of the transferror, has been generally regarded by the courts as not a substantial right within the meaning of § 117(q) of the 1939 Code or § 1235 of the 1954 Code. See Magnus v. Commissioner, supra; Watson v. United States, supra. But we think it plain that the agreement here in issue vested Young with the right to terminate at his own discretion and not upon the happening of a future event. The 1944 agreement provides that:

"This agreement may be terminated by either party at any time following six (6) months' notice in writing by one party to the other."

■ By its unambiguous terms this clause permits Young to terminate the transfer at his own will. There is nothing in the tenor of the agreement taken as a whole, or any provisions of the agreement, which supports a contrary construction. That we may not construe such a provision contrary to its plain

meaning on the strength of the taxpayer's testimony given in 1957 as to his intentions in 1941 and 1944 is too clear to require citation of any authorities.

Affirmed.

---

3. Treasury Regulation 1.1235–2(b) (1) provides that: "The term 'all substantial rights to a patent' means all rights which are of value at the time the right to the patent (or undivided interest therein) are transferred."