ANDREW SZEGVARI and RUTHANNE SZEGVARI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Szegvari v. Commissioner
Docket No. 1428-73.
United States Tax Court
T.C. Memo 1975-284; 1975 Tax Ct. Memo LEXIS 88; 34 T.C.M. (CCH) 1232; T.C.M. (RIA) 750284; September 15, 1975, Filed Rex E. Sager and Edwin M. Regal, for the petitioners. John P. Graham, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in, and additions to, petitioners' income taxes as follows: Addition to Tax Year
Deficiency
Sec. 6651(a) [1]
1967
$ 3,912.46
$ 586.87
1968
2,908.07
145.40
1969
4,923.00
492.30
$11,743.53
$1,224.57
*89 Petitioners conceded one issue; the remaining issues are whether income from certain patent contracts constitutes capital gain under section 1235 and whether additions to tax under section 6651(a) for failure to file timely returns are valid. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Andrew Szegvari (hereinafter petitioner) and Ruthanne Szegvari, husband and wife, resided in Akron, Ohio when their petition was filed. They filed Federal income tax returns for 1967 through 1969 with the District Director of Internal Revenue, Cincinnati, Ohio. Petitioner, an engineer, has developed and patented a number of inventions. Petitioner, Union Process Company (a proprietorship of petitioner), and Mitsui Miike Machinery Company, Ltd. (a Japanese company), entered into a patent agreement dated October 20, 1961, which provides in part as follows: 13. The parties mutually agree that in the event that either party hereto violates any of the terms or conditions of this Agreement, becomes insolvent, bankrupt, has a trustee appointed for it, or makes an assignment for benefit of creditors, the other party shall have the right after giving thirty (30) days *90 notice to the defaulting party to cancel and terminate this agreement, if the defaulting party within said thirty (30) days period fails to remedy the condition causing such notice. If such condition causing such notice is remedied or cured within such thirty (30) days period, then this Agreement shall continue in full force and effect as if no violation occurred. 14. It is mutually agreed between the parties that any and all improvements, modifications and additions made during the life of this Agreement by any party hereto or by any of "LICENSOR'S" licensees in other territories are automatically included within the scope of this Agreement by being automatically included within the context of "LICENSOR'S PATENTS" as recited in the Preamble of this Agreement. 15. Unless sooner terminated as herein before provided, the rights herein granted in each country shall be in force and effect for the period of ten (10) years from the date of Japanese Government approval, and shall be renewed thereafter automatically one year, unless written notice of an election to terminate shall be sent to the other party, at least ninety (90) days prior to the expiration of said ten (10) year period *91 or any yearly renewal thereof. (Emphasis added.) Lives of the patents granted in this agreement extended beyond the ten-year period specified in paragraph 15, which began when the Japanese government approved the agreement in April of 1963. On September 11, 1956, a memorandum on agreement was signed between Union Process Company (petitioner's proprietorship) and Netzsch Brothers Machinery, Ltd., Germany, which provided in part as follows: 6) U gives to N exclusive licence for the duration of the Agreement, all patents on improvement relating to Attritor equipment. * * *
9) In additional details the Agreement follows the Agreement set up between Societe d'Exploitation des Brevets Moineau, Societe a Responsabilite limitee, residence at Luxembourg, and Messrs. Netzsch Brothers, machine factory, Selb, Werkstrasse 19, dated 6 April, 1952. * * *
(Emphasis added.) Lives of the patent granted in the memorandum on agreement extended beyond December 31, 1969. The third party agreement (hereinafter Moineau Agreement) referred to in paragraph 9 of the memorandum on agreement above provided in part as follows: CONTRACT
Between Societe d'Exploitation des Brevets *92 Moineau (= Company for the Exploitation of the Moineau Patents) * * * designated licenser in the following, party of the first part, and the firm Gerbruder Netzsch, * * * designated licensee for brevity in the following, party of the second part, the following contract has been agreed on, subject to the approval of the foreign exchange authorities: * * *
This contract lasts as it is to 31 December 1969. From 1 January 1970 the license contract is continued under the same terms as with the other licensees of the licenser. No evidence was submitted concerning the terms of other licenses of Moineau referred to in the last-quoted paragraph above. Petitioner received and reported as capital gain the following amounts from the Japanese and German licensees: Year
Japanese Agreement
German Agreement
1967
$ 5,000.00
$4,605.80
1968
13,889.00
1969
30,807.56 Respondent determined that these amounts constituted ordinary income under section 61. Under the Japanese agreement licensee payments were periodically deposited in a Japanese bank account so that petitioner could have written a check on that account. Petitioner never inquired as to the balance *93 of that account. Licensee information reports on total payments deposited for a particular year were received by petitioner in April or May of the subsequent year. Petitioner's 1967 tax return was filed on July 17, 1968. His application for an extension of time to file for 1967 had been denied, and the due date was accordingly April 15. His 1968 and 1969 returns were filed on August 18 and September 17, respectively, of the following years; applications for extensions of time to file had extended the due dates only to July 15 of those respective years. OPINION The first issue is whether income from certain patent contracts constitutes capital gain under section 1235. Section 1235 provides in part that payments received as consideration for transfer of all substantial rights to a patent shall be characterized as long-term capital gain. [2] The statutory phrase "all substantial rights to a patent," however, does not include a grant of patent rights which is limited in duration by the agreement to a period less than the remaining life of the patent. Sec. 1.1235-2(b) (1) (ii), Income Tax Regs. Therefore, a transferor's right to terminate an agreement at will before the patent expires *94 generally renders section 1235 inapplicable. Section 1.1235-2(b) (4), Income Tax Regs.; Bell Intercontinental Corp. v. United States,381 F. 2d 1004, 1020, 1021 (Ct. Cl. 1967); Taylor-Winfield Corp.,57 T.C. 205, 214 (1971), affd. 467 F. 2d 483 (6th Cir. 1972); Arthur M. Young,29 T.C. 850, 858, 859 (1958), affd. 269 F. 2d 89, 93 (2d Cir. 1959). The applicability of section 1235 to the Japanese patent agreement depends upon whether petitioner has a termination right under paragraph *95 15 of that agreement. All substantial rights to a patent will not have been transferred under section 1235 if petitioner has a termination right at the end of the original ten-year contract term under paragraph 15 since the patent lives extend beyond the ten-year period mentioned therein. Paragraph 15 provides, in part, that the contract rights would be automatically renewed each year after expiration of the original ten-year term "unless written notice of an election to terminate shall be sent to the other party" (emphasis added) at least ninety days beforehand. Petitioner maintains that this phrase is ambiguous and that the Court should accordingly rely entirely on the parties' intent (as evidenced only by testimony of petitioner and his attorney) that Mitsui alone could terminate the agreement. We disagree, for the provision is not ambiguous or limited to either party. Furthermore, paragraph 13 of the agreement clearly uses "the other party" to refer to either party, and there is no reason to alter that interpretation because of terms intervening between the two uses of that phrase or because of any other terms of the agreement. Considering all evidence presented and the plain *96 terms of paragraph 15, we believe petitioner has a termination right before the patents expire, and income from this agreement is accordingly not capital gain under section 1235. Cf. Taylor-Winfield Corp.,supra at 215; Arthur M. Young,supra at 852. The German patent agreement, as supplemented by the Moineau agreement, is ambiguous as to whether all substantial rights to a patent have been transferred within the meaning of section 1235. It is particularly unclear whether paragraph 6 of petitioner's German agreement and the Moineau agreement, as incorporated by paragraph 9 of the German agreement, terminate the patent grant on December 31, 1969. Since that date is prior to petitioner's patent expiration date, such a construction of the German agreement would render section 1235 inapplicable. Petitioner has failed to submit any evidence concerning the parties' rights past December 31, 1969. In addition, although the practical construction which contracting parties place on a patent agreement is entitled to great weight in determining its meaning, Pickren v. United States,378 F. 2d 595, 600 (5th Cir. 1967), petitioner has *97 submitted practically no evidence regarding how the parties have construed the agreement in their operations. Since the burden of proof is on petitioner to show that all substantial rights have been transferred within the meaning of section 1235, Young v. Commissioner,269 F. 2d 89, 91 (2d Cir. 1959), affg. 29 T.C. 850 (1958), we are obligated to hold on this record that petitioner has failed to carry his burden of proof on this point. Income from this agreement is therefore not capital gain under section 1235. The second issue concerns section 6651(a), which in part imposes a penalty tax for failure to file a timely return unless due to reasonable cause and not willful neglect. Section 301.6651-1(c) (1), Proced. & Admin. Regs., states in part that "[if] the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Petitioner asserts that lack of information regarding the Japanese licensee's payments constitutes reasonable cause for not filing timely 1967, 1968 and 1969 returns. Petitioner made no attempt to determine, however, *98 whether or in what amounts payments were made to his Japanese bank account by the Japanese licensee, and his tax returns were filed long after he received payment reports from the Japanese licensee. Petitioner filed his returns well after the due date or after the extended periods of time for filing them had expired. Furthermore, no reason was given for petitioner's failure to file additional requests for timely extensions for 1968 and 1969. We find that petitioner's failure to ascertain the Japanese licensee's payments and timely file his returns was not due to reasonable cause and therefore the additions to tax under section 6651(a) are proper. Decision will be entered for the respondent.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. SEC. 1235. SALE OR EXCHANGE OF PATENTS. (a) General.--A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are-- (1) payable periodically over a period generally coterminous with the transferee's use of the patent, or (2) contingent on the productivity, use, or disposition of the property transferred.↩