JACQUES R. MILBERG AND ELAINE K. MILBERG, PETITIONERS *v.* COM-MISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3276–66. Filed May 27, 1969.

*Lawrence Milberg*, for the petitioners.
*Agatha L. Vorsanger*, for the respondent.

316

OPINION

The question presented is whether, under section 1235 of the Internal Revenue Code of 1954,[1] the petitioner is entitled to treat as capital gain the royalties received from Fitzgerald for its use of his undivided one-half interest in the patent. Section 1235(a) provides:

SEC. 1235. SALE OR EXCHANGE OF PATENTS.

(a) GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

The applicability of this provision turns on whether the licensing agreement with Fitzgerald effected a transfer of "all substantial rights" to the petitioner's undivided one-half interest in the patent. No claim has been made that the petitioner is entitled to capital gains treatment under any other provision of law.

An examination of the license agreement reveals that the petitioner did not, by the terms of such agreement, transfer to Fitzgerald all substantial rights to the patent. On the contrary, Fitzgerald received very limited rights, namely, the nonexclusive right to manufacture and sell items utilizing the invention for a period less than the remaining term of the patent. The petitioner and Mr. Greenberg as licensors retained, during the term of the license, the right to make any other use or disposition of the patent, or any rights thereunder, that they desired. In addition, after August 1966, they could dictate new terms for Fitzgerald's continued use of the patent, or they could deprive Fitzgerald of such use altogether.

The petitioner contends, however, that we should not base our decision merely on the terms of the license, but that we should examine all the surrounding circumstances to ascertain whether the retained rights have substantial value. He argues that the rights retained by him were insubstantial because Mr. Greenberg would, as a result of his interest in Fitzgerald, prevent the granting to any other person of a license to use the patent, and would insist upon the extension of the license to Fitzgerald when it expired in 1966. In support of this argument, Mr. Greenberg did testify that when the license agreement was executed in 1959, it was his intention not to agree to allow anyone else to use the patent, if it turned out to be successful.

At the outset, it should be pointed out that the 1958 transfer of a one-half interest in the patent to Mr. Greenberg did not accomplish a

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

transfer by the petitioner of "all substantial rights" to the one-half interest retained by him. This is so even though Mr. Greenberg did thereby acquire a veto power over the petitioner's subsequent use or disposition of his retained interest. *Walen* v. *United States*, 273 F. 2d 599 (C.A. 1, 1959). Therefore, the question is whether as a result of the subsequent license to Fitzgerald the petitioner then transferred all substantial rights to his interest in the patent.

We agree with the proposition that our decision should be based upon our examination of all the surrounding circumstances. See, e.g., sec. 1.1235–2(b)(1), Income Tax Regs.; S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 440 (1954). Yet, an examination of those circumstances leads us to different conclusions than those urged by the petitioner. In the first place, it is clear that under the license agreement, the petitioner and Mr. Greenberg retained *all* rights to the patent for the period following the expiration of the license in 1966 and prior to the patent's expiration in 1970. The petitioner argues that if the patent were successful, Mr. Greenberg, who had the power to prevent the granting of a license to anyone else, could and would insist upon an extension of the license to Fitzgerald. However, this argument overlooks the facts that the petitioner also had the power to block an extension of the Fitzgerald license and that he could use his power to bargain for some different arrangement. He could, for example, refuse to agree to the extension unless the royalty was increased or unless Mr. Greenberg agreed to the granting of licenses to others. Under these circumstances, we cannot say that the petitioner's rights in his patent interest for the period following the expiration of the Fitzgerald license were meaningless and insubstantial.

Similarly, even during the period covered by the Fitzgerald license, the petitioner retained substantial rights over his interest in the patent. Fitzgerald acquired only nonexclusive and nonassignable rights in the patent. Although the petitioner could not, acting on his own, grant a license to anyone else, he and Mr. Greenberg could do so, acting together, and despite Mr. Greenberg's interest in Fitzgerald and his declared intent as of 1959, we cannot find that there was no substantial possibility of their agreeing to do so. As time passed, they might have discovered that they could realize more from the patent by allowing other manufacturers to use it, because, for example, the other manufacturers were not competitors of Fitzgerald and their use of the patent would not result in any loss of business by Fitzgerald. In addition, they might have discovered that they could realize more in royalties from other manufacturers than they could realize in the form of increased profits from allowing Fitzgerald the exclusive use of the patent. Moreover, there is always the possibility that Mr. Greenberg

might have sold his interest in Fitzgerald, and he and the petitioner might decide to make altogether different arrangements for the licensing of the patent. In view of the restrictive form of the license to Fitzgerald, the petitioner and Mr. Greenberg retained the opportunity to make other uses of the patent, if subsequent events indicated that the alternatives were desirable. The fact that no other use was made of the patent does not negate the existence of these possibilities. In our view, the right to take advantage of the alternative uses of the patent was of substantial value.

In his reply brief, the petitioner invokes the specter of the corporate opportunity doctrine to support his claim that Mr. Greenberg would not have granted anyone else an interest in the patent; such action would, the petitioner says, have subjected Mr. Greenberg to a shareholder's derivative suit brought by Mr. Eastman. The applicability of this doctrine depends on a careful and subtle analysis of the facts of the particular case:

A finding of "corporate opportunity" will be denied wherever the fundamental fact of good faith is determined in favor of the director or officer charged with usurping the corporate opportunity, or where the company is unable to avail itself of the opportunity, or where availing itself of the opportunity is not essential to the company's business, or where the accused fiduciary does not exploit the opportunity by the employment of his company's resources, or where by embracing the opportunity personally the director or officer is not brought into direct competition with his company and its business. * * * [3 Fletcher, Cyclopedia Corporations, sec. 862, p. 236 (1965 rev. vol.).]

The petitioner has not presented, or attempted to present, either evidence or legal authority to support his contention, and we hold that it is without merit.

In summary, the petitioner has wholly failed to carry his burden of proving that the rights retained by Mr. Greenberg and him were of no substantial value. *Pickren* v. *United States*, 378 F. 2d 595 (C.A. 5, 1967); *Allied Chemical Corporation* v. *United States*, 370 F. 2d 697 (C.A. 2, 1967); *Oak Manufacturing Co.* v. *United States*, 301 F. 2d 259 (C.A. 7, 1962); *Arthur M. Young*, 29 T.C. 850 (1958), affd. 269 F. 2d 89 (C.A. 2, 1959); cf. *Redler Conveyor Co.* v. *Commissioner*, 303 F. 2d 567 (C.A. 1, 1962), affirming a Memorandum Opinion of this Court.

*Pickren* v. *United States*, *supra*, is similar to the present case in many ways. In that case, the taxpayer and Hooker, joint owners of certain secret formulas and trade names, entered into a license agreement with Freit Laboratories, a corporation in which Hooker owned the majority of the stock and the taxpayer owned no stock. The agreement gave Freit exclusive rights in the formulas and trademarks for a period of 25 years. The taxpayer sought capital gains treatment for

the royalties received under that agreement, but the court, applying the test whether the taxpayer had effected a transfer of all substantial rights in the patent, held that they were ordinary income on the ground that the formulas and trademarks had a useful life longer than 25 years. In that case, as in the present one, the other coowner of the formulas and trademarks owned a majority interest in the licensee corporation. The other coowner was not expressly given a veto power over the taxpayer's exercise of his rights in the patent, but it appears that he had such right by operation of law. See *Pickren* v. *United States, supra* at 600 and fn. 8. Yet, neither of these factors, alone or in conjunction, led the court to find that the taxpayer had transferred all substantial rights to his interest in the formulas and trademarks. That case is persuasive precedent for the result we reach.

*Decision will be entered for the respondent.*