JACQUES R. MILBERG AND ELAINE K. MILBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 621–68. Filed July 30, 1970

---

*Lawrence Milberg*, for the petitioners.
*Agatha L. Vorsanger*, for the respondent.

1564

The question presented is whether petitioner, having litigated the precise issue with respect to taxable year 1962, is precluded by collateral estoppel from receiving a decision on the merit.

The issue before the Court in *Jacques R. Milberg, supra*, was whether all substantial rights to petitioner's interest in a patent had been transferred, thus entitling him to capital gain treatment under section 1235. In holding that all substantial rights in petitioner's interest in the patent had not been transferred, the Court said:

it is clear that under the license agreement, the petitioner and Mr. Greenberg retained *all* rights to the patent for the period following the expiration of the license in 1966 and prior to the patent's expiration in 1970. The petitioner argues

that if the patent were successful, Mr. Greenberg, who had the power to prevent the granting of a license to anyone else, could and would insist upon an extension of the license to Fitzgerald. However, this argument overlooks the facts that the petitioner also had the *power* [emphasis ours] to block an extension of the Fitzgerald license and that he *could* [emphasis ours] use his power to bargain for some different arrangement. [52 T.C. at 318.]

It was petitioner's possession of the power to insist on a new agreement and his ability to exercise it to his advantage that was the key to the decision.

The Court's second and independent ground for its decision was that even during the term of the license, the nonexclusive nature of the assignment was sufficient to make a finding that all substantial rights had not been transferred. The Court, granting that Greenberg may have intended that no other license would be made by him and petitioner, said:

Although the petitioner could not, acting on his own, grant a license to anyone else, he and Mr. Greenberg could do so, acting together, and despite Mr. Greenberg's interest in Fitzgerald and his declared intent as of 1959, we cannot find that there was no substantial possibility of their agreeing to do so. * * * The fact that no other use was made of the patent does not negate the existence of these possibilities. In our view, the right to take advantage of the alternative uses of the patent was of substantial value. [52 T.C. at 318, 319.]

A reading of the case makes it quite clear that Greenberg's intent and veto power were not controlling in the decision.

It is petitioners' contention in the present case that additional facts pertaining to taxable years 1963 and 1964 are present and preclude application of collateral estoppel. They argue that the agreement entered into in 1965, while not having any direct effect on the tax years in question, carries evidential weight that at the time of the original license agreement, September 1, 1959, it was Greenberg's intention that the patent should and would not be licensed to anyone but Fitzgerald until its expiration in 1970. Petitioners urge that Greenberg would carry out this intent by exercise of the veto power received in the 1958 assignment of the one-half interest on the patent, i.e., by refusing to give his written consent to a license to anyone but Fitzgerald. The intention and ability to prevent license to others during the 4 years between 1966 and 1970, as well as any other time during the period of the license, are said to dilute any power retained by petitioner to such an extent as to render it valueless. On this basis petitioners argue that all substantial rights have been transferred within the meaning of section 1235. Apparently petitioners' argument is that Greenberg signed the 1965 agreement; that this tends to show that his intention in 1959 and thereafter was for the license to run in favor of Fitzgerald until expiration of the patent in 1970, and to the exclusion of anyone else until then; and that he would have exercised his veto

to accomplish this intent. Assuming that the executing of the subsequent agreement is relevant to the parties' intention some 6 years prior, it is at most evidence of Greenberg's intent which, as pointed out above, was not material to the prior decision.

Further, the 1965 agreement now urged on this Court as a new fact to be considered was available when *Jacques R. Milberg, supra*, came to trial in January of 1968. We need not speculate as to why the agreement was not offered as evidence in the prior case, but since it was not petitioners cannot now "have a question considered on its merits a second time merely because they failed to produce all the facts the first time." *Cory* v. *Commissioner*, 159 F.2d 391 (C.A. 3, 1947), affirming a Memorandum Opinion of this Court; see also *Gillespie* v. *Commissioner*, 151 F.2d 903 (C.A. 10, 1945), affirming a Memorandum Opinion of this Court, certiorari denied 328 U.S. 839 (1946).

The guidelines for applying collateral estoppel in a tax case are clearly laid down in *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948). It was there held that the doctrine must only be applied where "the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the *controlling* facts and applicable legal rules remain unchanged." (Emphasis added.)

There has been no change in law or legal climate regarding whether all substantial rights have been transferred under section 1235 since May 27, 1969, the date *Jacques R. Milberg* was filed. See *Commissioner* v. *Sunnen, supra*.

Since the only new fact is the 1965 agreement, which cannot be considered a change in controlling facts, we hold that petitioners are collaterally estopped from receiving a decision on the merits.

*Decision will be entered for the respondent.*