LARK SALES COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Lark Sales Co. v. Commissioner
Docket No. 1542-67
United States Tax Court
T.C. Memo 1976-291; 1976 Tax Ct. Memo LEXIS 111; 35 T.C.M. (CCH) 1300; T.C.M. (RIA) 760291; September 14, 1976, Filed Duane P. Benson and John F. Kelly, for the petitioner. Allan E. Lang, for the respondent. WILBUR
WILBUR, Judge: Respondent determined the following deficiencies in the Federal income tax of petitioner: Sec. 6651(a) [1] Year
Deficiency
addition
1959
$113,657.80
1960
90,523.00
$9,052.30
1961
76,659.53
1962
396,900.67
A substantial portion of these deficiencies is controlled by the following issues: 1. Whether petitioner was the owner of a property interest in Dairy Queen royalties (arising from a soft ice cream franchise operation) referred to as "2 Cents East" and thereby realized taxable income during the taxable years 1959, 1960, 1961 and 1962. 2. Whether petitioner was the owner of the property interest of a portion of Dairy Queen royalties referred to as "Medd Level" and thereby realized taxable income related thereto during the taxable years 1959, 1960, 1961 and 1962. 3. Whether L. S. Murchie was a person "related to" the petitioner within the meaning of section 267 during the taxable years *113 1959, 1960, 1961 and 1962.
Respondent contends that each of these issues has been decided in a prior judgment entered against petitioner. Lark Sales Co. v. Commissioner,437 F. 2d 1067 (7th Cir. 1971), affg. in part and revg. in part a Memorandum Opinion of this Court. Therefore, in accordance with procedural requirements, [2] respondent affirmatively pleaded collateral estoppel, and moved for a partial summary judgment under Rule 121, Tax Court Rules of Practice and Procedure.
The issue for our decision is whether petitioner is precluded by the prior judgment from contesting the issues enumerated above. Unfortunately, there has been no stipulation of facts. Some background facts found by this Court in the prior judgment and affirmed in material part by the Seventh Circuit are included herein as necessary for clarity. During the years in issue petitioner was an Illinois corporation having its principal office and place of business in Moline, Illinois.Petitioner filed its corporate income tax returns on the accrual basis for the taxable years ended December 31, 1959 through December 31, 1962, with *114 the district director of internal revenue, Chicago, Illinois. The early history of the Dairy Queen business was succinctly summarized by the Seventh Circuit, Lark Sales Co.,supra, at 1070: One Harry Oltz patented a soft ice cream freezer, which became the basis of the Dairy Queen ice cream business eventually established through the efforts of one H.A. McCullough. Oltz and his family primarily operated through Ar-Tik Systems, Inc., a corporation. McCullough, his family and his accountant, L. S. Murchie, operated through various corporations as well as individually. Oltz's patent expired in 1954 and apparently much of the machination arose from an effort to preserve royalty rights subsequent to the patent expiration. Income from 2 Cents East represented royalty payments which were to be paid by Ar-Tik to McCulloughs Dairy Queen, a partnership. In 1954, in apparent disregard of an earlier assignment to an entity dominated by Murchie, certain of the McCulloughs transferred ownership of 2 Cents East to petitioner. In the prior judgment we rejected petitioner's alternative arguments that either it was not the owner of 2 Cents East or that its interest *115 was confined to a security interest. The Seventh Circuit affirmed our finding that petitioner was the owner of 2 Cents East as a result of the 1954 conveyance, that such ownership continued through 1958 and that petitioner thereby realized taxable income. Lark Sales Co.,supra, at 1070-1071. Medd Level royalty income was also the subject of several inconsistent transactions. The Medd Level interest was effectively transferred to petitioner on October 4, 1955. Petitioner contended in the prior proceeding that it then conveyed the Medd Level income to McCulloughs Dairy Queen by an instrument dated November 1, 1955. The Seventh Circuit affirmed our finding that because no consideration was paid, this alleged conveyance was ineffective. In addition, conduct of the parties subsequent to the alleged conveyance indicated that petitioner, in reality, had never relinquished ownership and therefore was taxable on Medd Level income realized in the years 1956 through 1958. Lark Sales Co.,supra, at 1076. The issue of whether L. S. Murchie was "related to" petitioner within the meaning of section 267 controls deductibility of accounting fees *116 accrued as expenses by petitioner but not actually paid to Murchie, a cash method taxpayer. The Seventh Circuit affirmed our finding that despite a purported conveyance of Murchie's ownership of petitioner in 1956 or 1957 he effectively retained control and ownership and therefore was "related to" petitioner at least until March 26, 1962 when he allegedly received payment for the purported conveyance. Lark Sales Co.,supra, at 1074-1076. Each of the foregoing was decided in a suit involving deficiencies for the years 1955 through 1958. Whether petitioner may contest these issues in the instant case involving alleged deficiencies for the taxable years 1959 through 1962 depends on the application of the judicial doctrine of collateral estoppel, also known as estoppel by judgment. Collateral estoppel is the companion doctrine of res judicata. Both operate to prevent redundant litigation. Each serves the policy goals of achieving "economy of judicial time" and fulfilling the need for "certainty in legal relations." Commissioner v. Sunnen,333 U.S. 591, 597 (1948), Application of res judicata precludes parties to a suit and their privies from *117 contesting a cause of action on which a final judgment has been entered on the merits by a court of competent jurisdiction. Res judicata precludes contesting not only matters actually litigated but also all matters which could have been litigated to advance a party's position for that cause of action. Commissioner v. Sunnen,supra, at 597; Cromwell v. County of Sac,94 U.S. 351, 352 (1876). A different situation arises where the subsequent litigation involves a new cause of action. In that case, although res judicata is inapplicable, collateral estoppel may be appropriate to preclude redundant litigation if each of the necessary prerequisites are met. As applied to tax litigation, each year creates a new cause of action even if the issue arises from a continuing transaction. Commissioner v. Sunnen,supra, at 598-599; Tait v. Western Maryland Ry. Co.,289 U.S. 620, 624 (1933). Thus, in petitioner's case the years 1959 through 1962 represent a new cause of action apart from the years 1956 through 1958 involved in the prior judgment and although res judicata is inapplicable, collateral estoppel may be appropriate *118 if the necessary prerequisites are met. The requirements for collateral estoppel in tax litigation were delineated by the Supreme Court in Sunnen,supra, and repeatedly have been restated and elaborated by this Court. Essentially collateral estoppel precludes parties and their privies from relitigating issues actually and necessarily litigated and decided in a final prior judgment by a court of competent jurisdiction. Stewart Gammill III,62 T.C. 607 (1974); Thomas A. Shaheen, Jr.,62 T.C. 359 (1974); Blaine S. Fox,61 T.C. 704 (1974); Jacques R. Milberg,54 T.C. 1562 (1970); Jerome A. Wiltse,51 T.C. 632 (1969). For collateral estoppel to apply the issue in the second suit must be identical in all respects with the one decided in the first proceeding and the controlling facts and applicable legal rules must be unchanged. Sunnen,supra, at 599-600. Our initial inquiry is whether the prior decision was a final judgment rendered by a court of competent jurisdiction.Stewart Gammill III,supra, at 613. Thomas A. Shaheen, Jr.,supra, at 364. *119 The prior decision here was rendered by this Court and affirmed in material part by the Seventh Circuit. The jurisdictional competency of the prior judgment is uncontested. The prior judgment has become final.Moreover, the fact that the instant case was initiated prior to the rendering of the decision in the prior case does not preclude application of the collateral estoppel doctrine; timing is immaterial so long as the prior judgment is now final. See Old Colony Trust Co. v. Commissioner,279 U.S. 716, 728 (1929). Collateral estoppel may be invoked only against parties and their privies to the prior judgment.Although some courts have relaxed the requirement of mutuality, this Court has continued to insist on strict mutuality; i.e., a party may not invoke the application of collateral estoppel unless both parties are bound thereby and unless both parties would have been bound if the issue in the prior judgment had been decided for the other party. Stewart Gammill III, supra, at 614, 615; Harold S. Divine,59 T.C. 152, 156 (1972) affd. on this issue, 500 F. 2d 1041 (2nd Cir. 1974). In the instant case there is a complete *120 identity of parties. Both the petitioner and respondent were parties to the prior judgment and are bound thereby. We find that even the strictest requirements of mutuality are satisfied. In addition to identity of parties, the issues involved in the second suit must be "identical in all respects" with those tried previously. Commissioner v. Sunnen,supra, at 599. Here there is a complete identity of issues. A comparison of the issues decided in the prior judgment [3] with those presented in the current proceedings (see supra) makes this conclusion self-evident and we hold accordingly. The income in the present case from 2 Cents East and Medd Level arose from the same contracts as the income in the prior case. This is not a situation where the later income arose from contracts similar to but distinct from those examined in a prior judgment. Commissioner v. Sunnen,333 U.S. 591, 601-602 (1948). Likewise, whether petitioner was related to Murchie is the same question explored in the prior judgment; both arose from the identical underlying transactions. We find that the requisite identity of issues has been satisfied here. *121 However, mere identity of issues is insufficient. The parties must actually have litigated the issues, resolution of which were essential to the decision in the prior cases. Commissioner v. Sunnen, supra, at 598, 601; Cromwell v. County of Sac, 94 U.S. 351, 353 (1876). Likewise, where the issue sought to be estopped is factual in nature, it must be an ultimate fact essential to both judgments rather than merely evidentiary. John W. Amos, 43 T.C. 50, 54 (1964); Blaine S. Fox, 61 T.C. 704, 711 (1974). As the Seventh Circuit noted, the issues in the prior cases were "almost purely factual." 437 F.2d at 1069. Rather than being stipulated, each of the three issues was extensively litigated by the parties and subjected to detailed analysis by this Court and review by the Seventh Circuit. Nor was the resolution of these three issues merely evidentiary. Ownership of 2 Cents East and Medd Level was an ultimate finding of fact on which the legal liability for the tax was predicated. Similarly, whether L. S. Murchie was a person "related to" petitioner within the meaning of section 267 was an ultimate *122 factual conclusion essential to the decision in the prior case. With minor qualifications, the foregoing characterization of the issues is equally true in the instant case. However, difficulty arises if collateral estoppel is applied across the board to the issue of whether petitioner was "related to" Murchie within the meaning of section 267. In our prior decision we found it necessary to examine the ownership and control of petitioner for the period until March 26, 1962 to determine the effectiveness of the alleged conveyance prior to that date. We concluded that Murchie effectively retained ownership at least until March 26, 1962, when consideration was allegedly received from the major transferee of a prior transfer. We conceded that Murchie may have received payment on that date, thereby divesting him of this ownership. However, we expressly declined to decide the issue. Thus the issue was actually and necessarily litigated and decided only for the period ending March 25, 1962. However, respondent's motion seeks to estop petitioner from contesting the issue for the taxable years 1959, 1960, 1961, and 1962. [4]
*123 To determine how the foregoing affects respondent's motion it is necessary to analyze petitioner's potential liability under the language of section 267.[5] Section 267 precludes the deduction of certain expenses accrued by a corporation and owed to a cash basis taxpayer who owns more than 50 percent in value of the outstanding stock of the corporation, unless payment is made within 2-1/2 months after the close of the taxable year of the corporation. Such ownership is determined at the close of the taxable year or at any time within 2-1/2 months thereafter.Thus our finding that petitioner was "related to" Murchie at least until March 26, 1962 settles that issue for the taxable years 1959, 1960, and 1961. The issue for 1962 is also controlled by whether "at the close of the taxable year or at any time within 2-1/2 months thereafter" petitioner was "related to" Murchie.Since in the prior judgment we did not decide if Murchie was the owner of petitioner's stock for the period subsequent to March 25, 1962, this issue remains unresolved.To the extent that the deficiency arose from accounting fees to Murchie accrued and deducted in 1962, we find that petitioner is not estopped from contesting *124 the issue of whether Murchie was a person "related to" the petitioner.Otherwise, we find that each of the issues was actually litigated in the prior judgment and that their resolution is essential in the instant case as it was in the prior case. *125 The final requirement for the application of collateral estoppel is that "the controlling facts and applicable legal rules remain unchanged" from those in the first proceeding. Commissioner v. Sunnen, 333 U.S. 591, 600 (1948). Petitioner alleges generally that both the applicable facts and law have changed in the interim but has failed to specify changes which have taken place. Respondent contends there are no changes and we agree. Ownership of the 2 Cents East and Medd Level royalties were factual questions from which the legal liability for the taxable income arose. Whether Murchie was "related to" petitioner also turned on the factual question of ownership, in this case ownership of petitioner's stock. Petitioner has failed to allege any facts that, if proven, would have altered the legal relationships found in the prior proceeding. The applicable legal rules also remain unchanged. It is axiomatic that royalty payments constitute taxable income and that petitioner was therefore taxable on the royalty payments it owned. [6] The law governing the deductibility of expenses among related taxpayers, as contained in section 267, is also the same as the provision *126 involved in the prior judgment.After a thorough search of the law, the pleadings and the records, we find that there has been no change in either the governing judicial and statutory law or the applicable facts. We are not unmindful that the burden of proof is on the moving party. James T. Shiosaki, 61 T.C. 861, 863 (1974). However, a partial summary adjudication under Rule 121 is appropriate with respect to issues where there is no genuine dispute as to any material fact. Stewart Gammill III, 62 T.C. 607 (1974). Knowledge of changes in fact would be more accessible to petitioner than to respondent, yet despite ample opportunity to do so, petitioner has failed to identify any specific change in the relevant facts, and indeed, it does not appear that there is any. See 6 Moore, Federal Practice, par. 56.16 [5], pp. 2391-2393 (2d ed. 1974); Herzog v. Des Lauriers Steel Mould Co.,46 F. Supp. 211 (E.D. Pa. 1942). Moreover Rule 121(d) provides in part: When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his *127 pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him. Since petitioner has failed to respond as required we can only conclude that, with the exception for 1962 accounting fees, there is no genuine issue for trial with respect to the three issues under motion. Therefore, we grant respondent's motion for a partial summary judgment on the issues that we find petitioner collaterally estopped from contesting. We hold that the application of collateral estoppel is warranted to prevent petitioner from further contesting the following issues: 1. Whether petitioner was the owner of the property of 2 Cents East and thereby realized taxable income from Dairy Queen royalties related thereto during the taxable years 1959, 1960, 1961, and 1962.
2. Whether petitioner was the owner of the property interest referred to as Medd Level, and thereby realized taxable income by reason of its ownership of such interest during the taxable years 1959, 1960, 1961, and 1962. 3. Whether L. S. Murchie was a person *128 "related to" petitioner within the meaning of section 267 for the purposes of determining tax liability for the taxable years 1959, 1960, and 1961. We further hold that petitioner is not estopped from contesting the issue of whether L. S. Murchie was a person "related to" petitioner within the meaning of section 267 for the purposes of determining tax liability for the taxable year 1962. An appropriate order will be entered. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. See Rule 39, Tax Court Rules of Practice and Procedure.↩
3. Relevant portions of the prior judgment are collected here: Richard L. Medd,27 T.C.M. 1224, 37 P-H Memo. T.C. Par. 68,244 (1968). 2 CENTS EAST INCOME Excerpts from our findings in the Memorandum Opinion: Issue 3. Whether during 1956, 1957, and 1958 Lark, the petitioner, was the owner of the property interest of "2 Cents East" and thereby realized taxable income from Dairy Queen royalties in the amounts of $53,795.04, $62,079.19, and $44,938.09 during the respective years.
* * *
Ultimate Findings of Fact
During 1954 and prior to December 31 thereof, H. A. McCullough and his successor in interest, McCulloughs Dairy Queen, a partnership, transferred to Lark all of their rights in and to the 2 Cents East royalty payable under the Eastern Agreement and thereafter throughout the taxable years here involved Lark continued to be the owner of such royalty. OPINION * * *
In view of the record presented as to the contentions of the petitioner, we are unable to find that Micro Manufacturing Company on December 30, 1950, or any other date thereafter, acquired the ownership of the 2 Cents East royalty interest involved herein.Accordingly the contentions of the petitioner are not sustained.
* * *
Since we have held above that petitioner derived taxable income from 2 Cents East royalty for the years 1956, 1957, and 1958, effect will be given herein to the abovementioned stipulation. MEDD LEVEL INCOME Excerpts from our findings in the Memorandum Opinion: Issue 4. Whether Lark, the petitioner, purchased the property interest of the Medd Partnership in 1955 in Ohio and Eastern New York and thereby realized income from Dairy Queen royalties and other receipts from those areas, sometimes referred to as Ohio-Eastern New York or Medd Level, in the amounts of $56,597.69, $45,787.99, and $46,342.76 during 1956, 1957, and 1958, respectively. * * *
ULTIMATE FINDING
During 1955 through 1958, the petitioner was the owner of property interests under which it was entitled to receive royalties and other sums payable by all holders of Dairy Queen territorial franchises in Ohio and the eastern part of New York, and during 1956, 1957, and 1958 received and realized taxable income by reason of its ownership of such interests in the amounts of $56,597.69, $45,787.99, and $46,342.76, respectively, which it failed to report on its income tax returns for the respective years. MURCHIE ACCOUNTING FEES Excerpts from our findings in the Memorandum Opinion: Issue 6.Whether Lark, the Petitioner, Was Entitled to Deduct as Ordinary and Necessary Business Expenses for 1956, 1957, and 1958 the Amounts of $59,913.50, $29,408.25, and $13,570.50, Respectively, Which Were Accrued by Petitioner as Payable to L.S. Murchie & Company as Accounting Fees
* * *
Ultimate Findings From the time of the formation of McCulloughs Dairy Queen, Inc., on or about April 1, 1954, Murchie as its sole stockholder held and exercised the sole domination over and control of that corporation and its affairs. Following the purported transfer on March 31, 1956, by Murchie of his stock in McCulloughs Dairy Queen, Inc., Murchie continued to exercise domination and control of that corporation and its affairs.
The transactions by which Murchie purported to transfer his ownership of the stock in Lark to McCulloughs Dairy Queen, Inc., and his ownership of 96 shares of the stock in McCulloughs Dairy Queen, Inc., to H.A. McCullough and H.F. McCullough, in equal portions, did not constitute arm's length, or the equivalent of arm's length, and bona fide sales.
* * *
OPINION * * *
[Granting], but not deciding, that Murchie received payment for his Lark stock on March 26, 1962, it follows that on that date he became divested of his ownership of the Lark stock. Since ownership of the Lark stock remained in Murchie until March 26, 1962, McCulloughs Dairy Queen, Inc., did not acquire ownership thereof prior to that date. In view of the foregoing, we conclude that the factual situation presented here as to the Lark stock comes within the above-quoted provisions of section 267(a)(2) and (b)(2) and accordingly prevents the allowance of the deductions taken by Lark for the years in issue for the unpaid accounting fees accrued by Lark for such years. * * *
Since we have concluded that McCulloughs Dairy Queen, Inc., did not acquire ownership of the stock in Lark prior to March 26, 1962, and since the deductions here involved were those of Lark for the years 1956 through 1958, the provisions of section 267(a)(2), (b)(2), (c)(1) are without application here where only the purported sales by Murchie to H.A. McCullough and H.F. McCullough of shares of stock in McCulloughs Dairy Queen, Inc., are involved.↩
4. In his letter of deficiency respondent disallowed the accounting expenses for the years 1959, 1960 and 1961 on the basis that they were not established to be ordinary and necessary business expenses or alternatively that they were excluded by the provisions of section 267. Accounting fees for 1962, on the other hand, were disallowed in his notice of deficiency solely on the grounds that they were not established as ordinary and necessary business expenses. It is unclear in light of his motion and pleadings if respondent now is changing his position for 1962, to also disallow the accounting expenses on the alternative basis of section 267, or if 1962 was included solely to cover the 2-1/2 month period subsequent to the taxable year 1961. (See the provisions of section 267, infra↩.) In any event we have addressed the issue to make our stance explicit.
5. Section 267 reads in pertinent part as follows: SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) DEDUCTIONS DISALLOWED.--No deduction shall be allowed-- * * *
(2) UNPAID EXPENSES AND INTEREST.--In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,-- (A) If within the period consisting of the taxable year of the taxpayer and 2-1/2 months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and (B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (C) If, at the close of the taxable year of the taxpayer or at any time within 2-1/2 months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b). (b) RELATIONSHIPS.--The persons referred to in subsection (a) are: * * *
(2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual * * *.↩
6. Sec. 61(a).↩