JAMES K. CALCUTT AND JUNE B. CALCUTT PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26418-86.     Filed July 13, 1988.

*Ronald B. Rubin,* for the petitioners.
*Deborah Y. Clark,* for the respondent.

OPINION

DRENNEN, *Judge:* This case was assigned to Special Trial Judge Lee M. Galloway pursuant to the provisions of section 7456(d) of the Internal Revenue Code (redesignated section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755), and Rules 180 et

seq.[1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

GALLOWAY, *Special Trial Judge:* Respondent determined a deficiency of $3,701 in petitioners' 1982 Federal income tax together with an addition to tax under section 6651(a)(1) of $925 for 1982. After concessions by petitioners,[2] the remaining issue for decision is whether, for purposes of claiming net operating loss deductions under section 1374, petitioners are collaterally estopped by a prior decision of this Court from asserting that they are entitled to increase their adjusted basis in subchapter S corporation stock as a result of personally guaranteeing a third party loan made to such corporation. If we find that the doctrine of collateral estoppel does not bar petitioners from litigating respondent's determination of the 1982 deficiency, we must decide whether petitioners in this proceeding have sustained their burden of proving a claimed increased adjusted basis in subchapter S corporation stock.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. This reference incorporates the stipulation of facts and the attached exhibits.

Petitioners, husband and wife, resided in Ellicott City, Maryland, at the time their petition herein was filed. Petitioners timely filed a joint Federal income tax return for 1982 with the Internal Revenue Service Center, Philadelphia, Pennsylvania.

The factual background relevant to the issues herein is essentially the same as that involved in our decision reported as *Calcutt v. Commissioner,* 84 T.C. 716 (1984) (Calcutt I).[3]

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.

[2] Petitioners have conceded that they are not entitled to a deduction for an investment expense of $520 and that they are liable for the addition to tax under sec. 6651(a)(1).

[3] The docket numbers in Calcutt I are as follows: docket No. 29849-83—James K. Calcutt and June B. Calcutt; docket No. 29850-83—William Hershfeld and Pamela Hershfeld.

Petitioners and William and Pamela Hershfeld (the Hershfelds), desired to own and operate their own delicatessen. On September 21, 1977, petitioner James Calcutt made a $5,000 earnest money deposit to purchase a delicatessen located in Baltimore, Maryland. In October 1977, Fairfax Savings & Loan Association, Inc. (Fairfax), issued a commitment letter to petitioners and the Hershfelds for a $210,000 loan to finance the purchase of the delicatessen. The terms of Fairfax's loan commitment required petitioners and the Hershfelds to secure the loan by: (a) A mortgage on the delicatessen (land and buildings); (b) a security interest in all of the delicatessen's personal property; and (c) a mortgage on the personal residences of the petitioners and the Hershfelds.

On November 16, 1977, petitioners and the Hershfelds incorporated Uptown-Levy, Inc. (Uptown or the corporation), under the laws of the State of Maryland for the purposes of owning and operating the delicatessen. The initial capitalization of Uptown was $5,000. Upon incorporation and for all pertinent years, the petitioners owned 50 percent of the corporation as did the Hershfelds.[4] For all pertinent years, Uptown's shareholders duly elected to have the corporation taxed pursuant to subchapter S of the Internal Revenue Code of 1954. A timely Form 1120S (United States Small Business Corporation Income Tax Return), was filed for the year 1982.

On December 13, 1977, Fairfax loaned the corporation $210,000 to finance its purchase of the delicatessen. Although the original terms of the commitment letter required Fairfax to make the loan to petitioners and the Hershfelds individually, the loan was made to the corporation at the shareholders' request and for their convenience. On that same day, the corporation executed a promissory note in favor of Fairfax for the amount of the loan. A mortgage covering the delicatessen realty and the corporation's inventory, fixtures, licenses, machinery, and accounts receivable secured the note. The mortgage also covered the personal residences of the shareholders. Petitioners and the

---

[4]We will sometimes refer to petitioners and the Hershfelds collectively as the shareholders.

Hershfelds also executed an agreement making themselves personally liable on the note.[5]

Fairfax did not make less than fully secured business loans in 1977. Fairfax's policy was to make loans only when the value of the collateral was in excess of the amount of the loan. Fairfax appraised the delicatessen's land, building, fixtures, and machinery at $215,040. Fairfax made the loan based on this valuation. In 1977, the equities (fair market value of residence minus senior mortgage) in the personal residences of petitioners and the Hershfelds were approximately $53,254 and $42,000, respectively.

Due to poor business, Uptown encountered financial difficulties almost from its inception. On at least six occasions during the period 1979 to 1985, Uptown was late in making its loan payments. The shareholders were forced to make capital contributions in 1979 and 1980. In 1982, the corporation took out a $22,000 loan from Willie Crofoot. Despite these difficulties and threats by Fairfax to institute foreclosure, Uptown satisfied its arrearages on all occasions. All payments on the loan were made out of Uptown's operating account.

In Calcutt I,[6] by notice of deficiency dated July 20, 1983, the Commissioner determined, among other adjustments, that in 1981 the petitioners' claimed net operating loss deduction exceeded their allowable basis in the corporation's stock under section 1374. Consequently, the Commissioner disallowed part of petitioners' net operating loss deduction resulting in an income tax deficiency for 1981.[7]

Petitioners filed a timely petition for a redetermination of the deficiencies with the Tax Court. Their petition alleged that the Commissioner's determination with respect to the 1981 net operating loss deduction was in error. The

---

[5]Also as part of the loan transaction, Fairfax and the corporation executed a hypothecation agreement. The agreement provided that Fairfax leave $50,000 of the $210,000 loan proceeds in a designated account. The terms of the agreement stated that if Uptown should default on the loan and Fairfax instituted foreclosure proceedings, the $50,000 or a part thereof would be applied against the outstanding balance of the loan. The corporation would receive the $50,000 once the loan was repaid. There was no provision in the agreement, however, mandating that Fairfax had to proceed against the other collateral before drawing against the $50,000 in the event of foreclosure. .

[6]The parties have stipulated into evidence the following documents from the Calcutt I record: the notice of deficiency, the petition filed by Mr. and Mrs. Calcutt, respondent's answer, respondent's trial memorandum, and the transcript of the trial proceedings.

[7]Petitioners also had a Federal income tax deficiency for 1980 arising out of the operation of the corporation. That taxable year is not pertinent here, however.

Hershfelds also filed a petition in the Tax Court after receiving a notice of deficiency containing similar adjustments for the same taxable years.

The dockets in Calcutt I were consolidated for trial, and the case was tried in the Tax Court on October 2, 1984, before Judge Mary Ann Cohen. At the trial, petitioners proceeded pro se and the Hershfelds were represented by attorney Edward S. Margolis.

During trial, the parties introduced into evidence most of the documents used in the loan transaction Mr. Margolis argued that the loan entitled Uptown's shareholders to an increased basis in their corporate stock. In so arguing, he made the following points: (1) Fairfax looked to the shareholders for repayment of the loan; (2) the shareholders were guarantors and co-makers of the promissory note; (3) the shareholders' equity in their residences provided a means to increase their basis in their corporate stock; and (4) the substance, as opposed to the form, should determine the tax consequences of the loan transaction. However, no loan officer or other representative of Fairfax testified at the trial.

Petitioners contended that the provisions of section 465 also made the loan includable in the basis of the shareholders' stock. Towards the end of trial, the Court informed the parties that section 465 had no bearing in determining a shareholder's basis in subchapter S corporation stock. The Court then directed the parties to submit post-trial, seriatim briefs.

Neither petitioners nor the Hershfelds submitted any briefs, however. After inquiries by the Tax Court, Mr. Margolis advised the Court that petitioners and the Hershfelds did not intend to file a brief. Because Mr. Margolis had not entered his appearance on behalf of petitioners,[8] the Court ordered petitioners and the Hershfelds to show cause why these cases should not be dismissed under Rule 123(b) for their failure to properly prosecute or to comply with the Rules of the Court. Neither

[8] At the time of trial, Mr. Margolis was not admitted to practice before the Tax Court. At trial, Mr. Margolis was recognized specially on his representation that he would later secure admission to the Tax Court. He did not, however, ever file a written entry of appearance in accordance with Rule 24(a)(3).

petitioners nor the Hershfelds appeared at the hearing nor did they file any response to the Court's order.

On April 15, 1985, we issued our opinion in the case, holding that petitioners and the Hershfelds failed to sustain their burden of proof with regard to the net operating loss deduction issue, i.e., the taxpayers in Calcutt I failed to show that their respective bases in the subchapter S corporation should be increased to reflect a bank loan made directly to the corporation. As a result of our decision, petitioners' adjusted basis in their Uptown stock was zero at the end of the taxable year 1981.

In the notice of deficiency in this proceeding, respondent disallowed petitioners' claim of a net operating loss deduction from Uptown for 1982. Petitioners timely filed a petition with this Court, alleging that "petitioners are entitled to personally deduct losses suffered by [Uptown] because petitioners were personally liable for all amounts owed by that corporation."[9]

In his answer, respondent asserted that collateral estoppel bars petitioners from relitigating whether the Fairfax loan to the corporation should be included in the basis of their stock since that issue was decided in Calcutt I. Respondent also alleged that petitioners were estopped to deny that their adjusted basis was zero at the end of the 1981 taxable year.

In this proceeding, the evidence included extensive testimony by Jack Stollof, one of the owners of Fairfax and vice president in charge of the Fairfax loan department. Mr. Stollof confirmed that the $210,000 loan was secured by the mortgage on the delicatessen land and buildings, a security interest on the business personal property, the hypothecation agreement providing that Fairfax retain $50,000 of the loan proceeds as additional security, a mortgage on the personal residences of petitioners and the Hershfelds and a personal guaranty of the loan proceeds by petitioners and the Hershfelds. Mr. Stollof also testified that the loan was

[9]The Hershfelds filed a petition for the 1982 year contesting similar adjustments in controversy here. At the trial session calendar call, petitioners' and the Hershfelds' cases were consolidated by Court order for trial, briefing, and opinion. On the trial date, however, respondent moved and the Court granted a motion to sever the cases on the ground that the Hershfelds' case had been settled by the parties in that proceeding.

made to the corporation although "the original way was a loan to the Calcutts and the Hershfelds."

## OPINION

Petitioners contend that the adjusted basis in their Uptown stock should include a proportionate share of the Fairfax loan for purposes of claiming a net operating loss deduction under section 1374[10] for 1982. Respondent claims that our decision in Calcutt I precludes petitioners from relitigating this issue.

Respondent properly pleaded the affirmative defense of collateral estoppel in his answer. *Warren Jones Co. v. Commissioner*, 68 T.C. 837, 841 (1977), affd. 617 F.2d 536 (9th Cir. 1980); Rule 39. Because collateral estoppel is an

---

[10]For the year at issue, sec. 1374 provided:

SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLD-ERS.

(a) GENERAL RULE.—A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

(b) ALLOWANCE OF DEDUCTION.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion or the corporation's net operating loss (as determined under subsection (c)). The deduction allowed by this subsection shall, for purposes of this chapter, be considered as a deduction attributable to a trade or business carried on by the shareholder.

(c) DETERMINATION OF SHAREHOLDER'S PORTION.—

(1) IN GENERAL.—For purposes of this section, a shareholder's portion of the net operating loss of an electing small business corporation is his pro rata share of the corporation's net operating loss (computed as provided in section 172(c), except that the deductions provided in part VIII (except section 248) of subchapter B shall not be allowed) for his taxable year in which or with which the taxable year of the corporation ends. For purposes of this paragraph, a shareholder's pro rata share of the corporation's net operating loss is the sum of the portions of the corporation's daily net operating loss attributable on a pro rata basis to the shares held by him on each day of the taxable year. For purposes of the preceding sentence, the corporation's daily net operating loss is the corporation's net operating loss divided by the number of days in the taxable year.

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

affirmative defense, respondent has the burden of proving its elements. Rules 39, 142(a).

Res judicata and collateral estoppel are allied yet distinct concepts. Both operate to relieve the Government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayer's status." *Commissioner v. Sunnen*, 333 U.S. 591, 598-599 (1948), citing *Tait v. Western Md. R. Co.*, 289 U.S. 620, 624 (1933).

Res judicata provides that when a court of competent jurisdiction has entered a judgment on the merits of a cause of action, the parties to the suit and their privies are bound by every matter that was or could have been offered and received to sustain or defeat the claim. *Commissioner v. Sunnen, supra* at 597. Since income taxes are calculated on an annual basis and each taxable year therefore generates a separate cause of action in Federal tax litigation, res judicata applies only to subsequent proceedings involving the same claim and the same tax year. *Commissioner v. Sunnen, supra* at 598. Since the tax years involved in Calcutt I and the present case are different, res judicata does not bar petitioners' relitigation of the basis issue. See *Peck v. Commissioner*, 90 T.C. 162, 165 (1988).

Collateral estoppel, however, has a different scope than res judicata and is applied less severely. *Union Carbide Corp. v. Commissioner*, 75 T.C. 220, 252-253 (1980), affd. per curiam 671 F.2d 67, 68 (2d Cir. 1982). Collateral estoppel generally prevents parties and their privies from relitigating issues previously decided by a court of competent jurisdiction relating to a different tax year, or involving a new cause of action. *Gammill v. Commissioner*, 62 T.C. 607, 613 (1974).

The parties agree, and we find, that most of the requirements for collateral estoppel to apply are satisfied except whether: (1) Calcutt I constitutes a judgment on the merits on the shareholder guarantee issue; *Gammill v. Commissioner, supra;* (2) there has been a significant change in the controlling legal principles due to the decision in *Selfe v. United States*, 778 F.2d 769 (11th Cir. 1985); *Montana v. United States*, 440 U.S. 147, 155 (1979); *Commissioner v. Sunnen, supra;* and (3) there were special circumstances in

the prior proceeding which render collateral estoppel inapplicable here. *Montana v. United States, supra* at 155.

Generally a judgment on the merits is based on legal rights as distinguished from matters of practice, procedure, jurisdiction, or form. *Fairmont Aluminum Co. v. Commissioner,* 222 F.2d 622, 625 (4th Cir. 1955), cert. denied 350 U.S. 838 (1955), affg. 22 T.C. 1377 (1954). A judgment against a taxpayer who fails to produce sufficient proof constitutes a judgment on the merits. *Fairmont Aluminum Co. v. Commissioner, supra* at 625.

In Calcutt I, we recognized that petitioners' failure to file a Rule 151 post-trial brief was different from a case which is dismissed under Rule 123(b) because a taxpayer failed to comply with the Tax Court Rules. *Calcutt v. Commissioner,* 84 T.C. 716, 721, (1985), citing *Stringer v. Commissioner,* 84 T.C. 693 (1985). Our opinion concluded by stating:

under these circumstances we do not dismiss the case merely by reason of [petitioners'] failure to comply with the Rules and the order for briefs.

We do, however, decide the disputed issues against [petitioners] by reason of their failure to satisfy their burden of proof.

[*Calcutt v. Commissioner, supra* at 722.]

The above language indicates that although petitioners failed to submit post-trial briefs, our decision was not based on their noncompliance with the Tax Court Rules of Practice and Procedure. Rather, petitioners failed to prove that a portion of the loan could augment their basis under the applicable precedent, which we defined in Calcutt I as: "corporate debts to third parties guaranteed by the shareholder, whether collateralized or not, do not lead to an increase in the shareholder's basis in the subchapter S corporation stock. See, e.g., *Blum v. Commissioner,* 59 T.C. 436 (1972)." *Calcutt v. Commissioner, supra* at 720. Accordingly, under *Fairmont Aluminum Co. v. Commissioner, supra,* our decision in Calcutt I constitutes a judgment on the merits on the shareholder guarantee issue.

Collateral estoppel does not apply if there is a judicial declaration that vitally changes the controlling legal principles after the first proceeding. *Commissioner v. Sunnen, supra* at 600. *Sunnen* and its progeny indicate that the change can be either a judicial decision or a change in the applicable law or regulations. *Lea, Inc. v. Commissioner,* 69

T.C. 762, 767 (1978); *Jacob's Fork Pocahontas Coal Co. v. Commissioner*, 24 T.C. 60, 66-67 (1955).[11] Petitioners contend that the decision in *Selfe v. United States, supra*, effects a significant change in this area of the law.

In *Selfe*, the taxpayer obtained a bank loan for use in her business. When the business was incorporated as a subchapter S corporation, the loan was converted to a corporate loan and the taxpayer guaranteed the corporation's indebtedness to the bank. The 11th Circuit Court of Appeals held that a shareholder who has guaranteed a loan to a subchapter S corporation may increase her basis where the facts show that, in substance, the shareholder has borrowed funds and subsequently advanced them to the corporation.

The *Selfe* holding was based on the principles governing section 385 treatment of certain interests in corporations as stock or indebtedness and on the debt-equity analyses applicable to subchapter S corporations enunciated in *In re Lane*, 742 F.2d 1311 (11th Cir. 1984), and *Plantation Patterns, Inc. v. Commissioner*, 462 F.2d 712 (5th Cir. 1972), affg. T.C. Memo. 1970-182.[12] *Selfe v. United States, supra* at 773, 774. However, *Selfe* departed from a line of authority which held that, absent any actual shareholder-guarantor repayment of the corporate debt (the economic outlay requirement), a shareholder guarantee, or the shareholder's own property which secures the corporate debt does not serve to increase the adjusted basis of the shareholder's stock or the shareholder's indebtedness in the corporation.[13]

It is well-established that an intervening decision of the Supreme Court constitutes a significant change in the

---

[11] There has been no intervening change in the statutory law or in the regulations. In 1982 Congress revised the statutory law pertaining to subchapter S corporations in the Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669. Those revisions would not effect a change in the controlling legal principles here because they apply only to taxable years beginning after Dec. 31, 1982. Moreover, we note that former sec. 1374(c)(2) was reenacted by sec. 2 of the Subchapter S Revison Act of 1982 as sec. 1366(d)(1).

[12] The 11th Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted, as precedent, decisions of the former Fifth Circuit Court of Appeals rendered prior to Oct. 1, 1981.

[13] See *Brown v. Commissioner*, 706 F.2d 755 (6th Cir. 1983), affg. T.C. Memo. 1981-608; *Underwood v. Commissioner*, 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468, 475-476 (1975); *Perry v. Commissioner*, 392 F.2d 458, 461 (8th Cir. 1968), affg. 47 T.C. 159 (1966); *Raynor v. Commissioner*, 50 T.C. 762, 770-771 (1968); *Borg v. Commissioner*, 50 T.C. 257, 264-265 (1968). *Wheat v. United States*, 353 F. Supp. 720, 722 (S.D. Tex. 1973); *Neal v. United States*, 313 F. Supp. 393, 396 (C.D. Cal. 1970).

controlling law. *Commissioner v. Sunnen, supra* at 600; see also *McCall v. Commissioner,* 312 F.2d 699, 704-706 (4th Cir. 1963), affg. 37 T.C. 674, 683 (1962). Even an intervening change in law announced by a court of appeals has been held sufficient to preclude collateral estoppel. *Bush v. Commissioner,* 175 F.2d 391, 393 (2d Cir. 1949), affg. 10 T.C. 1110 (1948). Further, we have deemed that collateral estoppel is inapplicable where this Court subsequently abandons the legal precedent set down in its prior decision. *Mandel v. Commissioner,* 23 T.C. 81, 89-90 (1954), affd. 229 F.2d 382, 389-390 (7th Cir. 1956).

In our view, *Selfe* does not constitute a significant change in the controlling legal principles under consideration so as to make our decision in Calcutt I, as argued by petitioners, "obsolete or erroneous for future purposes." As noted above, the rule suggested in *Selfe* is contrary to at least five of our decisions, three of which have been affirmed by the Sixth, Fifth, and Eighth Circuit Courts of Appeal. Moreover, the court in *Selfe* recognized the substantial body of contrary law when it remarked that "arguments similar to Selfe's—that the taxpayer's guarantee is in reality a loan to the shareholder/taxpayer that is subsequently advanced to the corporation—usually meet with little success because the taxpayer is unable to demonstrate that the substance of his transaction is different than its form." *Selfe v. United States,* 778 F.2d at 774.

Finally, we have not abandoned the position we have taken in Calcutt I and many prior cases involving individuals who assert (unsuccessfully) that corporate indebtedness guaranteed by them represents in actuality corporate indebtedness running directly to them. See *Estate of Leavitt v. Commissioner,* 90 T.C. 206, 210 (1988), wherein we expressly declined to follow *Selfe.*

Finally, petitioners contend that certain special circumstances in Calcutt I would make it unjust to apply collateral estoppel here. They point to the following facts: petitioners were pro se at the first trial; no representative of Fairfax gave testimony at the trial; and petitioners filed no post-trial brief in support of their position. We find these arguments unpersuasive.

The purpose behind collateral estoppel is to relieve both the taxpayer and the Government alike of redundant litigation. *Commissioner v. Sunnen, supra* at 599. There is nothing in the Supreme Court's language in *Sunnen* to indicate that collateral estoppel does not operate where the taxpayer represented himself at the first proceeding.

It is settled that evidence which, by due diligence, could have been produced in the first proceeding is considered to have been available at the first proceeding. *Dean v. Commissioner,* 56 T.C. 895, 900 (1971). See also *Milberg v. Commissioner,* 54 T.C. 1562, 1566 (1970). Furthermore, the application of collateral estoppel is not precluded merely because a party failed to produce all the evidence the first time. *Cory v. Commissioner,* 159 F.2d 391, 392 (3d Cir. 1947), affirming a Memorandum Opinion of this Court. Here petitioners have failed to show that they were unable to secure the testimony of a Fairfax representative at the time of the Calcutt I trial. Moreover, they have not demonstrated that such testimony, if produced, would have tipped the scales in their favor, given the economic outlay requirement.

Consequently, petitioners are estopped from arguing that a portion of the loan to the corporation should be included in the adjusted basis of their stock for 1982. Petitioners are also estopped to deny that the adjusted basis in their Uptown stock was zero at the end of the 1981 taxable year.[14]

Petitioners have not shown that they may increase the adjusted basis in their stock because of loans or capital contributions made by them to the corporation in 1982. Sec. 1374(c)(2). Therefore, respondent's disallowance of petitioners' net operating loss deduction for 1982 must be sustained.

*Decision will be entered for the respondent.*

---

[14]Sec. 1376(b)(1) provides that the basis of a shareholder's stock shall be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock as determined under sec. 1374(c). In Calcutt I, we allowed petitioners a portion of Uptown's net operating loss for 1981 equal to the basis in their stock as determined at the end of 1981. Petitioners therefore had no basis in their stock at the end of the 1981 taxable year.