**Victor FULGONI, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 588–89T.**

United States Claims Court.

May 17, 1991.

Stephen C. Gilbert, Morristown, N.J., for plaintiff.

G. Robson Stewart, Washington, D.C., for defendant.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff entered into a stipulated decision in the United States Tax Court in which he conceded an income tax liability of $3572 for the year 1980. After the period for making a valid assessment had expired, Fulgoni voluntarily paid the $3572. He now seeks a refund of that amount plus interest and penalty.

Defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted, RUSCC 12(b)(4), averring that the Internal Revenue Service made a timely assessment of Fulgoni's 1980 tax liability. In support of its motion, defendant has submitted documentary and testamentary evidence which has not been excluded by the court, and, accordingly, defendant's motion shall be converted to a motion for summary judgment. RUSCC 12(b)(4) & 56.

Plaintiff responded by filing a cross-motion for summary judgment in which he asserted that the documents submitted by defendant did not establish that the IRS assessed the 1980 tax liability in a timely fashion.[1] Fulgoni further argues that even

if the tax was properly and timely assessed, the IRS failed to notify him of the assessment, and consequently the assessment is ineffective. For the reasons set forth below, the government's motion will be granted.

Part I recounts the factual background. Except where indicated otherwise, the facts are not in dispute. Part II discusses the statutory scheme for assessment and collection of deficiencies. Part III discusses the nature and sufficiency of the evidence proffered by the government in support of its contention that a timely assessment was made. Finally, part IV addresses whether Fulgoni's assertion that he did not receive notice and demand for payment of the interest and penalty assessed for 1980 invalidates the IRS's collection of such interest and penalty by administrative offset and by levy.

### I

On his 1980 federal individual income tax return, Fulgoni computed his tax liability to be $705 and requested a refund of $9624 which he received in due course.

In 1984, the IRS audited Fulgoni's 1980 return and determined that various deductions had been improperly taken. By letter of March 27, 1984, the IRS notified Fulgoni of a proposed deficiency of $8061 for 1980, and in response, Fulgoni filed a timely petition in the United States Tax Court contesting the deficiency. Nearly three years later, the IRS and Fulgoni agreed on a disposition in the Tax Court. The stipulated decision, which was signed by an Assistant District Counsel for the IRS, counsel for Fulgoni, and a Tax Court judge, and entered on March 30, 1987, provided in part:

---

1. The complaint and plaintiff's cross-motion for summary judgment were based on an allegation that there had been no assessment of the stipulated deficiency. Plaintiff's submittals in the summary judgment process intimated that documents submitted by the government as proof of assessment were false.

At an evidentiary hearing on May 13, 1991, plaintiff's counsel conceded that a timely assessment of the stipulated deficiency had indeed been made but that the assessment was "ineffective" as a matter of law because no proper

notice of assessment and demand for payment had been sent to plaintiff.

This eleventh-hour concession creates a potential jurisdictional problem since it is at variance with plaintiff's position before the IRS on his refund claim. However, because plaintiff's refund suit must be dismissed in any event, we address plaintiff's claims in this opinion as they stood in the complaint and in the papers submitted in support of plaintiff's cross-motion for summary judgment.

Pursuant to agreement of the parties in this case, it is ORDERED AND DECIDED:

. . . .

That there are deficiencies due from the petitioner for the taxable years 1980 and 1981 in the amounts of [$3,572] and $42,158.00, respectively.

. . . .

It is further stipulated that, effective upon the entry of this decision by the Court, petitioner waives the restriction contained in I.R.C. § 6213(a) prohibiting assessment and collection of the deficiency (plus statutory interest) until the decision of the Tax Court has become final.

According to defendant, on May 25, 1987, the IRS assessed $3572 in tax and $3900.51 in interest thereon against Fulgoni for 1980. Plaintiff disputes that an assessment was made. On October 1, 1987, Fulgoni (through his attorney, Stephen Gilbert) transmitted a check in the amount of $3572 as "payment in full of the tax due ... for the tax year 1980." Shortly thereafter, Fulgoni filed an amended return for 1980, claiming a refund of $3572.[2] The address shown on the amended return was "Victor Fulgoni, c/o Gilbert, Gilbert & Schlossberg, Esqs., P.O. Box 340, Morristown, New Jersey 07960."

On December 10, 1987, while Fulgoni's refund claim was pending, the IRS applied a $1189 overpayment from 1986 against Fulgoni's outstanding 1980 liability. (We refer to this procedure as administrative offset.) By letter of January 11, 1988, the IRS informed Fulgoni of the administrative offset; the letter also stated that Fulgoni had a balance remaining for 1980 of $3154.31. The letter was addressed to "Victor & Nancy Fulgoni, Gilbert, Gilbert & Schlossberg, Box 340, Morristown, NJ 07960–0340," and was received at that address by Fulgoni's attorney.

By letter of May 23, 1988, the IRS denied Fulgoni's claim for a refund of $3572. The letter was addressed to "Victor & Nancy Fulgoni, Gilbert, Gilbert & Schlossberg, Box 340, Morristown, NJ 07960–0340," and was received at that address by Fulgoni's attorney.

On July 16, 1988, the IRS sent a "Notice of Levy on Wages, Salary and Other Income" to Isotec Inc. (Fulgoni's employer). The notice stated that Victor Fulgoni had an outstanding tax liability for 1980 of $3333.52 which Fulgoni had refused to pay after notice and demand,[3] and instructed Isotec Inc. to remit to the IRS all wages and salaries owing to Fulgoni (other than income statutorily exempt from levy) until a release of levy was issued. The notice listed the taxpayer's name and address as "Victor L. Fulgoni, Gilbert, Gilbert & Schlossberg, Box 340, Morristown, NJ 07960–0340." IRS records indicate that on July 27, 1988 a payment was received in the amount $3333.52 in full satisfaction of Fulgoni's 1980 tax liability.

On October 26, 1989, Fulgoni filed his complaint for a tax refund in this court.[4]

---

2. The parties disagree as to the date when the amended return was filed. Defendant avers that the IRS received the amended return on October 25, 1987; plaintiff says the amended return was sent on November 23, 1987. For purposes of the dispositive motions, the disagreement is immaterial.

3. The January 11, 1988 letter informing Fulgoni of the administrative offset showed a "remaining balance" of $3154.31. This sum had increased to $3333.52 by July 16, 1988 presumably because of the accrual of additional interest.

4. By letter to counsel, we raised *sua sponte* the question whether this action could proceed in light of 26 U.S.C. § 6512(a), which bars a suit for a tax refund with respect to a tax year for which the taxpayer has received a notice of deficiency and has elected to contest liability in the Tax Court prior to paying the tax. Subsections (1)–(4) of section 6512(a) set out four exceptions to the general bar against refund suits for a tax year which has been the subject of a Tax Court action. Plaintiff contends that this case falls under section 6512(a)(2), which allows a suit for a refund of any amount collected in excess of an amount computed in accordance with a decision of the Tax Court. Defendant maintains that this case falls under section 6512(a)(3), which allows a suit for a refund of any amount collected after the period of limitation for assessment and collection. Fulgoni alleges that no assessment was made within the period of limitation for assessment. We concur with defendant's position and conclude that this suit is not barred by section 6512(a). (Plaintiff's latter-day concession that a timely assessment was made (see note 1 *supra* ) potentially impacts

In his complaint, Fulgoni alleges that the IRS failed to assess the stipulated tax liability for the year 1980 within the time required by statute, and, therefore, his October 5, 1987 payment was an overpayment which must be refunded. Fulgoni also alleges that even if the IRS timely assessed the $3572 liability and interest thereon, he did not receive notice of the assessment, nor did he receive notice and demand for payment prior to the administrative collection actions, so that the assessment and the collection actions were invalid. Although Fulgoni did not specifically request a refund of the interest and penalty assessed for 1980, if he is correct that there was no timely assessment of the principal amount of $3572 then the assessment of interest and penalty on the principal amount was invalid.

Defendant counters that on May 25, 1987, the IRS timely assessed the $3572 liability, along with $3900.51 in interest. Defendant also alleges that the IRS sent notice of the assessment, and asserts that, in any event, the fact that a taxpayer does not receive notice of an assessment does not affect the validity of the assessment. Defendant has submitted documentary and testamentary evidence in support of its assertion that a timely assessment (and notice thereof) was made in connection with the stipulated Tax Court decision.

The pivotal issue in the case is whether the IRS assessed the $3572 liability and interest thereon within the time prescribed by statute. A subsidiary issue is whether the subsequent collection of interest and penalty on the 1980 liability was properly carried out in light of Fulgoni's assertion that at no time did he receive notice and demand for payment of the deficiency prior to the collection actions.

We will resolve both issues against the backdrop of *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson* the court stated that

a factual dispute is genuine, and the entry of summary judgment is therefore precluded, only if the opponent of the summary judgment motion can adduce some evidence which would permit a rational factfinder to find in his favor on the disputed issue. 477 U.S. at 248, 106 S.Ct. at 2510. Thus, with regard to the primary issue in the case, Fulgoni must come forward with a showing sufficient to allow a rational factfinder to find that the IRS did not make a timely assessment of the $3572 liability. With regard to the subsidiary issue, Fulgoni must come forward with a showing sufficient to allow a rational factfinder to find that proper notice and demand procedures were not followed prior to the IRS's collection of interest and penalty on the 1980 liability. However, before turning to the government's evidence and Fulgoni's response to that evidence, a general discussion of the statutory scheme for tax assessment and collection of deficiencies is in order.

## II

An assessment of tax is "made by recording the liability of the taxpayer in the office of the Secretary [of the Treasury]." I.R.C. § 6203.[5] Authority to assess tax is delegated by the Secretary to the Commissioner of Internal Revenue, who in turn delegates assessment authority to district directors and directors of regional service centers. 26 C.F.R. § 301.6201–1 (1987). An assessment "shall be made by an assessment officer signing the summary record of assessment." 26 C.F.R. § 301.6203–1 (1987). The summary record of assessments for any given day is memorialized in IRS Form 23C. M. Saltzman, *IRS Practice and Procedure* ¶ 10.02, p. 10–4 (1981). However, the 23C does not contain information on individual taxpayers. *Id.* If a taxpayer requests evidence that an assessment has been made against

---

this conclusion. However, given plaintiff's confusing assertion that the assessment was "ineffective," we address the merits.)

**5.** All citations in the form "I.R.C. § ___" are to the provisions of the Internal Revenue Code, 26 U.S.C. (1988 ed.). Most of the events recounted

above took place while the Internal Revenue Code of 1954 was in effect. However, with just one exception noted below, the provisions in effect at the relevant times do not vary from the current version of the Code.

him for a given year, he is entitled to obtain the summary record along with supporting records ("pertinent parts of the assessment") which identify the taxpayer's name, the tax period involved, and the amount and character (*e.g.*, deficiency, jeopardy) of the liability assessed. 26 C.F.R. § 301.6203–1.

The formal act of recording the taxpayer's liability is highly significant, because an assessment must precede a demand for payment of the tax. I.R.C. § 6303(a). Demand for payment of tax, in turn, triggers the government's power to institute certain collection procedures. *See* I.R.C. § 6321 (tax lien arises when taxpayer fails to pay tax after demand); I.R.C. § 6331 (IRS may collect unpaid tax by levy following demand for payment).

Prior to assessing a deficiency, the IRS must send a notice of deficiency under I.R.C. § 6212. The IRS is prohibited from assessing the tax it believes is deficient until 90 days after the issuance of a notice of deficiency in order to afford the taxpayer an opportunity to contest liability in the Tax Court before paying the tax. Should the taxpayer elect to contest liability in the Tax Court, the IRS may not assess any tax or initiate any collection action until the Tax Court has determined that there is a deficiency and that decision has become final. I.R.C. §§ 6213(a) (Supp.IV 1980) & 6215. Tax Court decisions become final 90 days from the date they are entered. I.R.C. §§ 7481 & 7483.

■ I.R.C. § 6503(a)(1) allows the IRS to make an assessment within the 60–day period following the date a Tax Court decision becomes final. However, when the taxpayer agrees to a stipulated decision in the Tax Court and agrees to waive section 6213(a) restrictions on assessment and collection (Fulgoni agreed to both),[6] the IRS may assess tax in accordance with a Tax Court decision at any time during the 150–day period following the date a Tax Court decision is entered. *Pesko v. United States*, 918 F.2d 1581, 1583 (Fed.Cir.1990).[7]

The amount of "any internal revenue tax ... assessed or collected after the [applicable] period of limitation" is an overpayment. I.R.C. § 6401. A voluntary payment of tax beyond the period for making an assessment does not constitute a waiver of the limitation period, and such a payment may be refunded under I.R.C. § 6402(a) upon the timely filing of a claim for a refund. Rev.Rul. 74–580, 1974–2 C.B. 400.

The IRS may collect "any liability in respect of an internal revenue tax" by applying a taxpayer's overpayment against that taxpayer's liability for unpaid tax. I.R.C. § 6402(a). The IRS may collect unpaid tax by levy if the taxpayer does not pay the tax within ten days of notice and demand for payment. I.R.C. § 6331.

---

**6.** It appears from the documents submitted by the government that Fulgoni executed IRS form 870, "Waiver of Restrictions on Assessment and Collection," on March 30, 1987. (The form is reproduced in M. Saltzman, *IRS Practice and Procedure* ¶ 9.03[4], p. 9–10 (1981).) Form 870 provides in part that "Your [the taxpayers's] consent [to waive restrictions on assessment and collection] will not prevent you from later filing a claim for refund (after you have paid the tax) if you later believe you are so entitled. It will not prevent us [the IRS] from later determining, if necessary, that you owe additional tax...." *Compare Kretchmar v. United States*, 9 Cl.Ct. 191 (1985) (in different version of form for waiver of restrictions on assessment and collection, IRS agrees not to reopen the year in issue and taxpayer agrees not to file a claim for a refund or credit for the year in issue; taxpayers' execution of this form estopped them from later bringing refund action in the Claims Court).

**7.** The IRS may very well have additional time beyond the 150–day period within which to make an assessment if whatever time was left in the limitation period for making an assessment when the Tax Court petition was filed is "tacked on" to the 150–day period immediately following the entry of a stipulated Tax Court decision. *See Olds & Whipple v. United States*, 86 Ct.Cl. 705, 716, 22 F.Supp. 809 (1938) (statutory provisions prohibiting assessment and collection of tax during pendency of Tax Court proceeding suspend running of limitation period on assessment and collection until 60 days after Tax Court decision becomes final, at which time limitation period begins to run again). However, the government does not allege, and there is nothing to lead us to believe, that the assessment of Fulgoni's 1980 tax liability was made more than 150 days after the date of the Tax Court decision. Hence, we need not address whether the 150–day period for assessment was extended by a "tacking period."

Based on the foregoing authorities, the issues for decision are narrow. If the IRS assessed Fulgoni's 1980 tax liability and interest thereon within 150 days of March 30, 1987, the date the stipulated Tax Court decision was entered, such assessment was timely and Fulgoni's claim for a refund of $3572 fails. Conversely, if the IRS did not assess the $3572 liability and interest thereon by August 27, 1987 (*i.e.*, within 150 days of March 30, 1987), Fulgoni's October 5, 1987 payment and subsequent payments of interest and penalty are overpayments which should be refunded. A separate issue is whether the IRS's collection by administrative offset and by levy of interest and penalty on the $3572 liability was invalid due to the IRS's alleged failure to make a notice and demand for payment prior to the administrative offset and the levy. We now turn to the evidence submitted by the government in support of its contention that an assessment was made on May 25, 1987.

### III

■ In support of its motion for summary judgment, the government submitted three documents and oral testimony to establish that a timely assessment was made. The first document is a Certificate of Assessments and Payments, dated December 15, 1989. The Certificate covers tax year 1980, identifies Fulgoni by name and social security number, and is signed by an IRS official with the title "Supervisor, Certification Group." The signatory attests that the Certificate is a true and complete transcript of all assessments, penalties, interest, abatements, credits, refunds, and advance payments for the period indicated. According to the Certificate, the IRS assessed $3572 in tax and $3900.51 in interest thereon against Fulgoni in a summary record of assessment, form 23C, dated May 25, 1987.

The government also offered IRS form 4303, Transcript of Account, dated November 16, 1989. The form is more comprehensive than the Certificate of Assessments and Payments, and summarizes all of the activity related to Fulgoni's tax liability for the year 1980. Like the Certificate, the Transcript indicates that on May 25, 1987, a 23C was executed in which Fulgoni was assessed $3572 in unpaid tax and $3900.51 in interest thereon for 1980. The Transcript also indicates that notice of the assessment was sent to Fulgoni on May 25, 1987.

Finally, defendant presented a two-page document entitled Summary Record of Assessments, Brookhaven (N.Y.) Service Center. The form looks regular on its face, and appears to be a 23C, although neither defendant nor the document itself identifies it as such. The form was signed by the assessment officer on May 22, 1987, who by her signature attests to the accuracy of the data contained therein.

Fulgoni submitted with his cross-motion for summary judgment a Certificate of Assessments and Payments dated November 21, 1989, which varied slightly in format and in substance from the December 15, 1989 Certificate of Assessments and Payments submitted by the government. Like the December 15, 1989 Certificate, the November 21, 1989 Certificate indicates that an assessment of $3572 in unpaid tax for 1980 and $3900.51 in interest thereon was assessed against Fulgoni on May 25, 1987. Further, the Certificate is signed by an IRS official, who certifies that it is a complete record of all assessments, payments, penalties, interests, abatements, credits refunds and advance payments for 1980.

On May 13, 1991, an evidentiary hearing pursuant to RUSCC 43(c)[8] was conducted to receive testimony concerning the records and operations of an IRS service center. At the hearing, the government presented the testimony of a tax examiner from the IRS service center in Brookhaven, New York, who testified to routine IRS procedures and to her interpretation of the doc-

---

8. RUSCC 43(c) provides:
   Evidence on Motions. When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition.

uments based on the routine practice of the IRS in the preparation of the documents.

The tax examiner explained that a Transcript of Account and a Certificate of Assessments and Payments are prepared from the taxpayer's Master File. A Master File is stored electronically in the IRS computer system, and contains all of the information that the IRS keeps on a given taxpayer. The tax examiner explained that a Transcript of Account is an excerpt of a taxpayer's Master File, generally prepared for internal IRS use. A Certificate of Assessments and Payments, on the other hand, is an abstract of certain information in the Master File prepared either for purposes of litigation or upon the request of a taxpayer inquiring about the status of his account. At the hearing, the November 16, 1989 Transcript of Account, the November 21, 1989 Certificate of Assessments and Payments and the December 15, 1989 Certificate of Assessments and Payments were received into evidence.

"A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made," and is presumptive proof of a valid assessment. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991) (citations omitted). In the present case we have more than the ostensible minimum necessary to raise the presumption that an assessment was made: the November 16, 1989 Transcript of Account, the November 21, 1989 Certificate of Assessments and Payments and the December 15, 1989 Certificate of Assessments and Payments all indicate that on May 25, 1987, the IRS assessed $3572 in unpaid tax and $3900.51 in interest thereon against Fulgoni for 1980. The May 25, 1987 assessment was within 150 days of the March 30, 1987 Tax Court decision, and was therefore timely.

In an attempt to rebut the presumption of a valid assessment and thus preclude summary judgment, Fulgoni cites minor irregularities in the Certificate of Assessments and Payments and the Transcript of Account. According to Fulgoni, since the November 21 Certificate differs slightly from the December 15 Certificate, and since both are less comprehensive than the Transcript, the government's documents evidencing the assessment should not be given any weight. However, neither Certificate purports to be a complete record of *all* activity relating to Fulgoni's account. Rather, the Certificates purport to be complete records of all *assessments* and *payments* for 1980, and although differing somewhat in format, the entries on the November 21 Certificate and on the December 15 Certificate are identical with respect to payments and assessments. Thus, the two Certificates do not contradict each other; they are mutually reinforcing.

In sum, Fulgoni attempts to raise a genuine issue of material fact by denying that an assessment was made and by pointing to insignificant errors in the documents submitted by defendant. These attempts fall short of the showing needed to demonstrate that a triable issue exists. For purposes of evaluating a motion for summary judgment, a dispute is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict" for the opponent of the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir.1984) (party opposing summary judgment must show evidentiary conflict on the record, and cannot stand on mere denials or conclusory statements). In the face of the documentary evidence in the record, the government has made a *prima facie* showing that a timely assessment was made. In the absence of any countering evidence from Fulgoni, a reasonable factfinder could not find that a timely assessment was not made.

Fulgoni argues that the assessment was ineffective due to the IRS's failure to notify Fulgoni formally of the assessment. However, the effectiveness of an assessment does not depend on the IRS sending notice of the assessment to the taxpayer; lack of notice only deprives the IRS of its authority to proceed administratively to collect the unpaid tax. *Rocovich v. United States*, 18 Cl.Ct. 418, 422 (1989),

*aff'd*, 933 F.2d 991 (Fed.Cir.1991); *United States v. Chila*, 871 F.2d 1015, 1018–19 (11th Cir.1989). Fulgoni voluntarily paid the $3572 sum for which he stipulated he was liable, so whether the IRS sent notice of the assessment is not material.

Accordingly, the government is entitled to judgment as a matter of law on Fulgoni's claim for a refund of $3572.

### IV

There remains the issue of the validity of the IRS's collection of interest and a penalty by administrative offset and by levy. Again, the IRS assessed $3900.51 in interest on May 25, 1987, and it later assessed additional interest in the amount of $532.71 and a penalty for failure to pay tax in the amount of $89.30. The IRS collected these sums by applying an overpayment from 1986 to the 1980 liability and by levying on Fulgoni's salary.

■ The IRS has express statutory authority to collect unpaid tax by administrative offset. Under I.R.C. § 6402(a), "[i]n the case of any overpayment, the Secretary [of the Treasury] ... may credit the amount of such overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment...." There is no express statutory requirement that the IRS make notice and demand for payment upon the taxpayer before collecting unpaid tax by administrative offset, but according to Fulgoni administrative offset is a "taking" of money which is "tantamount to" a levy and thus, notice and demand for payment is required prior to administrative offset. Fulgoni cites I.R.C. §§ 6155, 6215 and 6303 in support of his assertion that notice is required prior to administrative offset, but none of those provisions is applicable. Section 6155 requires a taxpayer to pay tax upon receiving a notice and demand for payment. Section 6215 provides that a deficiency that has been determined in accordance with a final Tax Court decision

shall be assessed and shall be paid upon notice and demand for payment. Section 6303 provides that the IRS shall within 60 days of assessment make notice and demand for payment upon a taxpayer liable for unpaid tax. Fulgoni seems to be arguing that the converse of the above provisions would suggest that if there is no notice and demand for payment then a taxpayer is not liable for unpaid tax; that is not what these provisions say.

The administrative offset was a simple bookkeeping operation of applying a credit for 1986 against a debt for 1980. To call this action a taking tantamount to a levy is disingenuous. A levy is the taking of property from a debtor to satisfy a debt, whereas in the case of administrative offset property which is already rightfully in the hands of the creditor is retained by the creditor to satisfy a debt. Neither statute nor fairness requires notice prior to administrative offset, and Fulgoni is thus not entitled to a refund of the $1189 overpayment applied against his 1980 liability.

■ On the other hand, whether the IRS made proper notice and demand for payment at least ten days prior to conducting the levy is critical to the validity of the levy. I.R.C. § 6331. The documents submitted by the government indicate that several notices had been sent to Fulgoni, but the documents were unclear as to whether the notices were a 10–day notice and demand for payment required by I.R.C. § 6331. The Transcript of Account shows that a "5th Notice" was sent to Fulgoni on June 6, 1988. According to the tax examiner, a 5th Notice is a notice that the IRS intends to collect unpaid tax by levy. The levy took place on July 16, 1988, more than the statutorily-required minimum of ten days from the notice and demand for payment.

Plaintiff's only challenge to the levy consists of a vague assertion that Fulgoni did not receive notice and demand for payment of the tax prior to the levy.[9] According to the tax examiner, the June 6, 1988 5th

---

**9.** The tax examiner testified that if a 5th Notice is returned to the IRS undelivered, the notice is attached to the taxpayer's return and is retained by the IRS. Here, there is nothing to indicate

that the 5th Notice was returned undelivered. We understand Fulgoni's argument to be that the 5th notice either was sent to the wrong address or was not sent at all.

Notice would have been sent to the taxpayer's last known address. As noted above, Fulgoni filed his 1985 and 1986 returns using his attorney's office in Morristown, New Jersey as a mailing address. In October 1987, Fulgoni filed his amended 1980 return, again using the address of his attorney in Morristown, New Jersey, and the Master File Transcript (also received into evidence at the hearing) indicates that as of November 29, 1987, the IRS recorded Fulgoni's address as that of his attorney in Morristown, New Jersey. Further, on January 11, 1988 Fulgoni's attorney received the notice regarding the $1189 administrative offset at his office in Morristown. Finally, the July 16, 1988 Notice of Levy indicates the taxpayer's address to be that of his attorney in Morristown, New Jersey.

All indications are that the June 6, 1988 5th Notice was sent to Fulgoni's attorney in Morristown. There is thus no genuine issue of material fact relative to whether the 5th Notice was sent, or where it was sent. (Fulgoni does not even allege that he changed his mailing address after January 11, 1988.) We therefore conclude that the IRS complied with the ten-day notice and demand for payment requirement of I.R.C. § 6331, and that the IRS's collection by levy of Fulgoni's outstanding $3333.52 liability was proper.[10]

### V

Accordingly, defendant's motion to dismiss for failure to state a claim upon which relief can be granted, which has been converted to a motion for summary judgment, is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED. Judgment shall be entered in favor of the defendant.

Pursuant to RUSCC 54(d), costs shall be allowed to the defendant ("the prevailing party").

---

**10.** Plaintiff did not submit an administrative claim for a refund contesting the collection of the interest and penalty by administrative offset and by levy. There is therefore some doubt whether Fulgoni's challenge to the administrative offset and the levy can be entertained. *See* I.R.C. § 7422 ("[n]o suit ... shall be maintained ... for the recovery of any internal revenue tax ... or of any sum alleged to have been ... in any manner wrongfully collected, until a claim for a refund or credit has been duly filed with the Secretary [of the Treasury] ...").

Defendant suggests that Fulgoni's challenge to the administrative offset and levy falls under an exception to the general rule that a refund suit cannot be maintained on grounds not raised in the administrative refund claim. *See Union Pacific R.R. v. United States*, 182 Ct.Cl. 103, 109, 389 F.2d 437 (1968) (where the IRS could not have made its determination without considering and evaluating the grounds raised in the

subsequent refund suit, the variance doctrine does not preclude a court from considering those grounds even if they were not explicitly raised in the administrative refund claim). Here, the only issue the IRS considered, or needed to consider, in evaluating Fulgoni's refund claim was whether there was a timely assessment following the stipulated Tax Court decision. It would have had no occasion to consider whether the collections by administrative offset and by levy were invalid due to failure to give notice. Indeed, the administrative refund claim was filed before the administrative offset and the levy took place, and was denied some two months before the levy took place.

Because neither party challenged jurisdiction, and further because plaintiff's suit must be dismissed in any event, we have addressed the collection issues on the merits.