T.C. Memo. 2002-285


UNITED STATES TAX COURT


JEANNE M. TRENT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7408-01.                    Filed November 20, 2002.


<u>Richard P. Eisen</u>, for petitioner.

<u>Gary S. Stirbis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This proceeding was commenced under section
6015 for review of respondent's determination that petitioner is
not entitled to relief from joint and several liability for 1994
with respect to a joint return filed with Steven Trent
(S. Trent).  The issues for decision are whether petitioner is
barred from relief on the basis of res judicata under section

6015(g)(2) and whether application of petitioner's overpayments, including earned income credits, for subsequent years violates section 6015(e)(1)(B).  In his reply brief, respondent states: "If the Court finds that petitioner is not barred from raising I.R.C. sec. 6015 by the doctrine of res judicata, then respondent concedes that petitioner is entitled to relief from joint and several liability under I.R.C. sec. 6015(f)."  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Los Lunas, New Mexico, at the time she filed the petition in this case.  From May 1981 to November 1996, petitioner was married to S. Trent.  Petitioner and S. Trent had 2 minor children during the year in issue.  Petitioner had access to the couple's joint checking account and paid bills from the account.

S. Trent was the sole proprietor of a motorcycle repair shop, Paradise Cycles (Paradise).  In 1993, petitioner began working for Paradise as an office manager.  Petitioner answered the telephone, picked up motorcycle parts, prepared a general ledger, reviewed receipts and expenditures, and paid bills.  The general ledger contained records of checks, expenses, and income.

Expenses were separated into columns for rent, utilities, and suppliers. Personal expenses were logged by petitioner in the ledger as a draw. In 1994, Paradise hired a bookkeeper, Mary A. Hogland, to prepare financial statements and to prepare the joint Federal return of petitioner and S. Trent.

Petitioner and S. Trent timely filed a joint Federal income tax return for 1994, claiming a refund of $896. During 1994, Paradise was the sole source of income for petitioner's family. Paradise's income and expenses were reported on Schedule C, Profit or Loss From Business, to petitioner's and S. Trent's Form 1040.

In 1995, petitioner and S. Trent experienced marital difficulties. In response to incidents on November 23 and November 25, 1995, petitioner filed a petition to order S. Trent to appear for a hearing on domestic abuse with the Second Judicial District Court for Bernalillo County in New Mexico. Petitioner also filed a Petition for Order Prohibiting Domestic Violence on November 27, 1995. On November 13, 1996, a divorce decree was entered by the court. In the divorce decree, S. Trent received control of Paradise and retained all of the business-related material and assets. Pursuant to the divorce decree, S. Trent assumed all business liabilities including any future taxes or debts associated with Paradise.

Respondent subsequently commenced an audit of petitioner's and S. Trent's 1994 Federal income tax return. On August 22, 1997, respondent sent to petitioner and to S. Trent a notice of deficiency for 1994 determining a deficiency in the amount of $23,046. Respondent disallowed Paradise's deductions for advertising, labor, and other expenses. Respondent also disallowed the offset for cost of goods sold. Petitioner timely filed a petition for redetermination of the deficiency with the Court.

Before July 13, 1998, petitioner met with Appeals Officer Wayne McClellan (McClellan) in an effort to settle the dispute. Prior to petitioner's meeting with McClellan, a clerk in the Appeals Office suggested that petitioner might ask about "innocent spouse". At the end of her meeting with McClellan, petitioner asked whether "innocent spouse" was something for which she would qualify. McClellan informed her that she was following the correct steps and the correct procedures and that then was not the time to raise an innocent spouse defense.

Petitioner was unable to produce original documentation to substantiate all of the deductions disallowed in the notice of deficiency. Petitioner subsequently retrieved microfiche copies of bank statements from the bank. Petitioner also retrieved copies of receipts from Paradise's suppliers. Respondent accepted petitioner's substantiation for advertising and rent

expenses.  Respondent additionally allowed $400 of the $4,032 for labor expenses, but disallowed the remaining expenses because there was no record that Forms 1099, Miscellaneous Income, were issued.  Respondent further allowed $1,200 of the $4,441 claimed for small tools expense.  Petitioner then stipulated to a deficiency of $4,478 plus interest.  A decision was entered by the Court on December 17, 1998.

On April 19, 1999, respondent sent to petitioner a notice of intent to levy.  On May 3, 1999, petitioner timely filed Form 8857, Request for Innocent Spouse Relief, requesting section 6015 relief from joint and several liability for the year in issue.  On March 15, 2001, respondent sent to petitioner a notice of determination denying section 6015 relief.  The determination was based on the conclusion that petitioner had knowledge of the business and its activities that precluded relief.  In an amendment to the answer filed April 22, 2002, in this case, respondent raised the defense of res judicata.

On March 10, 2000, respondent applied an overpayment of $2,323 from petitioner's 1999 Federal income tax return towards the 1994 liability.  Following the March 15, 2001, determination, respondent applied an overpayment of $2,367 from petitioner's 2000 Federal income tax return towards the remaining 1994 liability.  On April 15, 2002, respondent notified petitioner that her 2001 refund of $1,895 was delayed until respondent

determined whether petitioner had any additional Federal taxes due. The three overpayments that respondent withheld to offset petitioner's liability included earned income credits for 1999, 2000, and 2001.

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). A spouse (requesting spouse) may, however, seek relief from joint and several liability by following procedures established in section 6015. Sec. 6015(a). Section 6015 replaced prior section 6013(e) and was intended to expand relief available to joint filers. See Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 685, 734. The RRA 1998 gave section 6015 retroactive effect in that it was made applicable to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before such date that remained unpaid as of July 22, 1998. RRA 1998 sec. 3201(g)(1), 112 Stat. 740; Vetrano v. Commissioner, 116 T.C. 272, 277 (2001). A requesting spouse may request relief from liability under section 6015(b) or, if eligible, may allocate liability according to provisions in section 6015(c). Sec. 6015(a). In addition, if

relief is not available under section 6015(b) or (c), an
individual may seek equitable relief under section 6015(f).

Res Judicata Under Section 6015(g)(2)

The judicial doctrine of res judicata provides that, when a
court of competent jurisdiction enters a final judgment in a
cause of action, the parties are bound "not only as to every
matter which was offered and received * * * but as to any other
admissible matter which might have been offered for that
purpose." Commissioner v. Sunnen, 333 U.S. 591, 597 (1948).
Because Federal income taxes are determined on an annual basis,
each year is a separate cause of action, and res judicata is
applied to bar subsequent proceedings involving the same tax
year. See id. at 597-598; Calcutt v. Commissioner, 91 T.C. 14,
21 (1988). The doctrine applies to judgments even where the
Court's final decision was based on an agreement between the
parties. See United States v. Bryant, 15 F.3d 756, 758 (8th Cir.
1994) (citing United States v. Intl. Bldg. Co., 345 U.S. 502, 505
(1953)).

Respondent argues that petitioner is barred from raising the
issue of section 6015 relief based on her prior participation in
a Tax Court proceeding regarding the 1994 liability. Section
6015(g)(2) provides that, in the case of an election under
section 6015(b) or (c) for any taxable year that is the subject
of a final court decision, such decision shall be conclusive

unless the individual's qualification for relief was not an issue in the prior court proceeding and the individual did not participate meaningfully in the prior proceeding.  In <u>Vetrano v. Commissioner</u>, <u>supra</u> at 278, the Court stated:

> an individual who participated meaningfully in a court proceeding is precluded from electing relief under section 6015(b) or (c) for the same taxable year after the decision of the court becomes final, whether or not the individual's qualification for relief under section 6015(b) or (c) was an issue in the prior proceeding.

Petitioner filed a petition for redetermination of the 1994 liability with the Court.  She then met with the Appeals officer to discuss her case.  She personally participated in the meetings with the Appeals officer, and she conceded at trial that she signed the decision document freely and voluntarily.

Petitioner testified that she raised the issue of relief from joint and several liability with the Appeals officer and that the Appeals officer declined to consider the issue at that time.  Relying on statements by the Appeals officer, petitioner argues that section 6015 relief was not an issue in the first proceeding.  She argues that her level of involvement in the prior case was not "meaningful" for purposes of section 6015(g)(2) because she was not represented by counsel, was not involved in discussions of law or procedure, and was not knowledgeable about law or procedure.

The quality of advocacy and the actual knowledge of the litigants are not special circumstances in determining whether a

prior judgment is a bar in subsequent litigation. See <u>Jones v. United States</u>, 466 F.2d 131, 136 (10th Cir. 1972); <u>Cory v. Commissioner</u>, 159 F.2d 391, 392 (3d Cir. 1947), affg. a Memorandum Opinion of this Court dated Mar. 10, 1945; <u>Dean v. Commissioner</u>, 56 T.C. 895, 899-900 (1971); <u>Milberg v. Commissioner</u>, 54 T.C. 1562 (1970); <u>Fairmont Aluminum Co. v. Commissioner</u>, 22 T.C. 1377 (1954), affd. 222 F.2d 622 (4th Cir. 1955). Petitioner's criteria would be impractical to apply in the context of a doctrine intended to minimize multiplicity of proceedings. See <u>Jones v. United States</u>, <u>supra</u> at 136; <u>Dean v. Commissioner</u>, <u>supra</u> at 902. The related but broader doctrine of collateral estoppel has been applied to decisions where the taxpayer has appeared pro se in the prior proceeding. See <u>Calcutt v. Commissioner</u>, <u>supra</u> at 25.

Under the narrow circumstances of this case, however, we conclude that the general rule of res judicata should not apply. Petitioner's meeting with the Appeals officer handling her 1994 deficiency case occurred about the time that section 6015 was being finalized by Congress and at least 10 days before its effective date. Although the decision was entered pursuant to the negotiated settlement months later, it appears that both the Appeals officer and petitioner were ignorant as to the effect of the new law. Res judicata was not discussed in the notice of determination denying relief to petitioner or in the memorandum

accompanying the recommendation to deny relief.  Res judicata was not raised in the original answer filed in this case on August 13, 2001--more than 3 years after the effective date of section 6015.  For the first time, in a Motion for Leave to File Amendment to Answer, filed April 9, 2002, respondent stated:

> Upon preparation for trial, respondent's counsel discovered that the petitioner materially participated in a prior proceeding for the 1994 tax year before the U.S. Tax Court, whereby a Decision document was signed by petitioner on December 1, 1998, the respondent on December 16, 1998, and entered by the Court on December 17, 1998.

McClellan was not available to testify at trial, and we do not know his rationale for declining to consider petitioner's request for relief from joint liability.  We assume, however, that he was aware that proposed legislation would give taxpayers an opportunity to raise that claim in a later action but, like petitioner, was unaware of the res judicata effect of closing a deficiency case under the circumstances then existing.

Section 1.6015-1(e), Income Tax Regs., 67 Fed. Reg. 46286 (daily ed. July 18, 2002), effective with respect to requests for relief filed on or after July 18, 2002, provides:

> (e) <u>Res judicata and collateral estoppel</u>.  A requesting spouse is barred from relief from joint and several liability under section 6015 by res judicata for any tax year for which a court of competent jurisdiction has rendered a final decision on the requesting spouse's tax liability if relief under section 6015 was at issue in the prior proceeding, or if the requesting spouse meaningfully participated in that proceeding and could have raised relief under section 6015.  A requesting spouse has not meaningfully

> participated in a prior proceeding if, due to the effective date of section 6015, relief under section 6015 was not available in that proceeding. Also, any final decisions rendered by a court of competent jurisdiction regarding issues relevant to section 6015 are conclusive and the requesting spouse may be collaterally estopped from relitigating those issues.

Although not by its terms applicable to petitioner's request for relief, the regulation sets forth a rule that appropriately should apply in this case. In view of the uncertainty of the law at the time of the meeting between petitioner and McClellan, this case presents the type of special circumstances that may overcome the bar of res judicata. See generally Montana v. United States, 440 U.S. 147, 153-155 (1979); Commissioner v. Sunnen, 333 U.S. 591 (1948); Worcester v. Commissioner, 370 F.2d 713 (1st Cir. 1966), affg. in part, vacating in part, and remanding T.C. Memo. 1965-199. Because petitioner was precluded by an apparent misunderstanding on her part and on the part of the Appeals officer from raising her claim to relief from joint liability in the prior proceeding, we hold that she is not barred by section 6015(g) from equitable relief under section 6015(f). In view of respondent's concession that she is entitled to such relief if we so hold, we need not address her entitlement to relief under section 6015(b) or (c).

Restrictions on Collection Activity Under Section 6015(e)(1)(B)

Petitioner argues that the Commissioner incorrectly "levied" petitioner's refunds and credits for tax years 1999, 2000, and

2001 after petitioner applied for relief from joint and several liability. Section 6015(e)(1)(B) states that respondent may not levy on a requesting spouse's property until the close of the 90-day period after respondent makes a final determination respecting that spouse's election for relief from joint and several liability under section 6015(b) or (c), and, if a petition is filed with the Tax Court during that period, the restriction upon such a levy continues until the Court's decision becomes final.

A levy must be distinguished from an offset of an overpayment or refundable credit, such as the earned income credit of section 32. See, e.g., Belloff v. Commissioner, 996 F.2d 607, 615-616 (2d Cir. 1993) (comparing discussion of "levy" in United States v. Natl. Bank of Commerce, 472 U.S. 713, 720 (1985), with "setoff" in United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947)), affg. T.C. Memo. 1991-350. Section 6402(a) grants the Commissioner the ability to credit an overpayment to offset any taxpayer liability. An overpayment includes the amount of a refundable credit that exceeds any tax owed. See sec. 6401(b)(1); Savage v. Commissioner, 112 T.C. 46, 48 (1999). The Commissioner properly may engage in nonlevy collection actions, such as offsetting overpayments from other tax years after the requesting spouse files for relief. See, e.g., Fulgoni v. United States, 23 Cl. Ct. 119, 126 (1991) (to

call an offset a "taking tantamount to a levy is disingenuous");
cf. sec. 301.6330-1(g)(2) Q&A-G3, Proced. & Admin. Regs.
Respondent properly offset petitioner's 1994 tax liability by
crediting refunds from other years in accordance with section
6402.  We hold that respondent did not engage in collection
activity in violation of section 6015(e)(1)(B).

To take account of respondent's concession,

An appropriate order

will be issued.